PATTERSON et ux. v. ENGLISH et al.

(Court of Civil Appeals of Texas. Amarillo. Oct. 28, 1911. Rehearing Denied Dec 15, 1911.) [1]

1. EXEMPTIONS (§ 43*)—DOMESTIC ANIMALS—"MILCH COWS."

Under Sayles' Ann. Civ. St. 1897, art. 2395, which exempts to every family from forced sale "five milch cows and their calves," heifers which had never been milked but which were with calf when the levy was made, and which the debtor, who was the head of the family, was keeping as his milch cows, are exempt.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 42, 43; Dec. Dig. § 43.*

For other definitions, see Words and Phrases, vol. 5, p. 4501.]

2. EXEMPTIONS (§ 43*)—DOMESTIC ANIMALS—"MILCH COWS."

Under Sayles' Ann. Civ. St. 1897, art. 2395, which exempts from forced sale "five milch cows with their calves," a heifer bought by a debtor with the bona fide intention that it should be raised and bred is exempt.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 42, 43; Dec. Dig. § 43.*]

3. EXEMPTIONS (§ 43*) — STATUTORY PROVISIONS — DOMESTIC ANIMALS — YOUNG ANIMALS.

Where a statute exempts from forced sale "horses," "cows," "yoke of oxen," etc., young animals of the species and descriptions named that will eventually become such are within its meaning.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 42, 43; Dec. Dig. § 43.*]

4. EXEMPTIONS (§ 4*)—CONSTRUCTION OF EXEMPTION LAWS.

The courts of this state give a liberal construction to the exemption laws in all cases.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 4; Dec. Dig. § 4.*]

5. INJUNCTION (§ 252*)—DAMAGES ON DISSOLVING INJUNCTION.

Sayles' Ann. Civ. St. 1897, art. 3010, provides that, upon the dissolution of an injunction on final hearing where the collection of money has been enjoined, a court, if satisfied that the injunction was only for delay, may assess 10 per cent. on the amount as damages. Defendant, in a suit to enjoin an execution, brought a cross-action for damages, but on the hearing showed no proof of damages caused by the temporary injunction. *Held,* that a judg-

[1] Filed in the Court of Civil Appeals at Ft. Worth January 23, 1911, and transferred to this court July 1, 1911, by order of the Supreme Court.

ment against the plaintiff and the sureties on his injunction bond for the full amount of the judgment upon which execution had issued was unauthorized.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 252.*]

Graham, C. J., dissenting.

Appeal from Deaf Smith County Court; W. H. Russell, Judge.

Action by Jeff Patterson and wife against Mrs. E. J. English and others to enjoin an execution, in which defendants brought a cross-action for damages on account of the temporary injunction. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Barcus & North, for appellants. Carl Gilliland, for appellees.

HALL, J. The principal question presented by this appeal is: What is included in the term "milch cow" as used in the exemption statute?

Appellant Jeff Patterson was the head of a family, and at the time of the levy of the execution herein owned and claimed as exempt property one cow and calf, one young cow, and three Jersey heifers. Execution in favor of the appellee was levied upon the heifers, and appellant, joined by his wife, filed this suit against the appellees for damages, and obtained a temporary writ of injunction restraining the sale.

[1] Sayles' Civil Statutes 1897, art. 2395, reserves to every family exempt from forced sale "five milch cows and their calves."

The suit was tried in the court below upon an agreed case under Sayles' Civil Statutes, art. 1293, and the facts upon this issue are set out therein as follows: "The three heifers levied upon were the following ages, to wit: One was born January 2, 1909, and brought a calf April, 1910. One was born January 11, 1909, and brought a calf July 19, 1910. And one was born March 9, 1909, and brought a calf August 1, 1910. That all three of said heifers were with calf at the time of the levy. That he (appellant) was keeping the three heifers as his milch cows. That at the time of the levy none of these heifers had ever given milk, and none of them were giving milk at the time of the levy. That he owned the mothers of the three heifers when these heifers were born, but that several months prior to the time of the levy he sold the mothers of the three heifers. That at the time of the levy all three of the heifers were with calf, and before the trial of this cause each of the three had brought a calf."

Appellee in a very ingenious brief insists that because the adjective "milch" is defined by Webster as "giving milk," and the noun "milk" means a fluid, the term "milch cow" means a cow that is actually giving milk at the time of the levy, does not include one

that has heretofore or may thereafter give milk, and therefore neither of the heifers came within the letter or spirit of the law, since neither of them had ever given milk.

The exemption laws of Oklahoma provide that there shall be exempt to every family "five milch cows and their calves, under six months old" (St. 1893, § 2844), being identical with the provision of the above-quoted Texas law, except that calves are not exempt after six months of age under the Oklahoma law. In the case of Nelson v. Fightmaster, 4 Okl. 38, 44 Pac. 213, Burford, Justice, in construing the statute of Oklahoma above quoted, said: "The next question is whether or not the three heifers are exempt. The court below held that inasmuch as they had never been milked, and had never had calves, they were not exempt. It was found that the plaintiff had two other cows that were used for milch cows, and that the three heifers were with calf, and were being raised and kept to be used as milch cows. In Carruth v. Grassie, 11 Gray [Mass.] 211 [71 Am. Dec. 707], under a statute exempting one cow, a heifer 20 months old, and not with calf, and never having been milked, was held exempt; it appearing that the owner was raising it for his family cow. Under a like statute in Dow v. Smith, 7 Vt. 465 [29 Am. Dec. 202], a heifer with a calf was declared exempt. And in the later case of Freeman v. Carpenter, 10 Vt. 433 [33 Am. Dec. 210], a heifer not with calf was adjudged exempt. Freeman on Executions, § 230 says: 'It is also insisted that, when the law exempts a thing, it impliedly authorizes the debtor to obtain that thing on the most advantageous terms within his reach. Therefore it is claimed that the exemption of a cow implies that the debtor may procure one by buying. and raising a heifer.' And this position seems to be sustained by authority. It is true our statute exempts 'milch cows'; but to hold to the letter of the law would be to subject a milch cow to levy and sale as soon as she became 'dry,' so that the same cow would be exempt one season of the year, and subject to levy at another season. This is not the intention of our statute. It is intended to exempt to each head of a family five cows suitable for, intended to be used for, and kept for, milch cows. The fact that such cow is not actually giving milk is not material, nor will it defeat the right of exemption that she has never actually given milk. The claim of plaintiff that he was raising and keeping these heifers to be used as milch cows is corroborated by the fact that the heifers had been bred and were with calf. It is not usual to breed beef cattle or cows raised for the market; and we think, under the facts found, these heifers come as much within the spirit and intention of the law as if they had been actually giving milk at the time of the levy. It follows therefore that the district court erred in holding that they were not exempt."

[2] We approve the decision quoted and think to hold otherwise would have the effect of depriving the very class for whose protection the exemption laws were enacted of many benefits to be derived therefrom. One may not be financially able to purchase a milch cow, but could buy a heifer and raise and breed her for a nominal sum, and we think he should be protected if he is sincere in his undertaking.

[3] There is a uniform tendency of the courts to hold that where a statute exempts "horses," "cows," "yoke of oxen," and the like, young animals of the species and description named that will eventually become such are within the meaning of that term as used in the statute. Johnson v. Babcock, 8 Allen (Mass.) 583; Stirman v. Smith (Ky.) 10 S. W. 131, 132; Berg v. Baldwin, 31 Minn. 541, 18 N. W. 821, 822; Mundell v. Hammond, 40 Vt. 641; Mallory v. Berry, 16 Kan. 293.

[4] The policy of the courts of this state is, in all cases, to give a liberal construction to our exemption laws, and in doing so they have held that a dray is a "wagon" (Cone v. Lewis, 64 Tex. 331, 53 Am. Rep. 767); that an automobile is a "carriage" (Parker v. Sweet, 127 S. W. 881); that a diamond ring is "wearing apparel" (First National Bank v. Robinson, 124 S. W. 177); that a piano is "household and kitchen furniture," and that the term extends to all furniture both useful and ornamental (Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, 5 Am. St. Rep. 53); that the word "horse" includes a bridle and saddle, as well as the shoes on its feet and the rope and martingales around its neck (Cobbs v. Coleman, 14 Tex. 594; Dearborn v. Phillips, 21 Tex. 449), because these things are necessary for its beneficial enjoyment. And this spirit of liberal construction has been indulged until they have held that an unbroken colt is a "horse" within the meaning and purport of the exemption laws (Hall v. Miller, 21 Tex. Civ. App. 336, 51 S. W. 36); and even that a mule, removed as he is one degree by consanguinity, is nevertheless a "horse." Furthermore, in their effort to extend the humane and beneficial character of our exemption statute, they have become so blind to every other consideration that they have looked upon the mule's father and pronounced him—voice, ears, and all—a horse. Robinson v. Robertson, 2 Willson, Civ. Cas. Ct. App. § 254.

We think a heifer with calf in the natural order of events is nearer a milch cow than a mule is to a horse, and that the spirit of a law which can convert a jackass into a horse should be made to hover a parturient heifer—yes, all three of them—under its protecting wings until time can bring them safely within the letter of the law.

[5] Judgment was rendered against the appellant and the sureties on his injunction bond for the full amount of the judgment upon which execution was issued. The agreed statement contained no evidence in

any way sustaining appellees' cross-action for damages, and the statute does not authorize judgment on the bond upon dissolving the injunction for a sum above ten per cent. (and this as damages only) on the amount released by the dissolution of the injunction, exclusive of costs (Sayles' Civil Statutes, art. 3010), and in no event could judgment have been properly rendered against the sureties for the principal sum enjoined. T. & N. O. Ry. v. White, 57 Tex. 129; Avery v. Stewart, 60 Tex. 154.

For the errors indicated, the case is reversed and remanded.

GRAHAM, C. J. (dissenting). While I concur in the conclusion reached by the majority of the court as to a reversal of the cause, because the record does not support that portion of the judgment appealed from wherein liability was fixed against the sureties on the injunction bond for the claim sued for, together with 10 per cent. damages thereon, I cannot agree to the conclusion reached by the majority that the three heifers were exempt from execution and forced sale; and, as this question must be properly decided before the case can be disposed of according to law, I think it proper to dissent from said conclusion, and I give my reasons therefor below.

Succinctly stated, the question is: Can three heifers, one a few days more than three years old and the other two about two months less than three years old, neither of which had ever given milk, nor brought a calf, and neither of which were giving milk at the time they were levied upon under legal process, but all of which at the time of the levy would soon become milch cows, and had been raised by the owner for the purpose of making milch cows of them, and all of which had been bred by the owner and at the time of the levy were being kept by him for future use as milch cows for his family, the owner being at the time of the levy the head of the family and claiming them as his exempt property, be held to be exempt under the law, even if they were the only cattle owned by him?

The agreed statement on which the case is submitted in this court, and which is copied at length in the majority opinion, to which reference is here made, I take it, shows most clearly that the question above stated is the one, a proper solution of which is necessary in this case.

A proper solution of the question depends upon the construction to be given subdivision 7 of article 2395 of our Revised Civil Statutes; the entire article reading as follows: "The following property shall be reserved to every family exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: (1) The homestead of the family. (2) All household and kitchen furniture. (3) Any lot or lots in a cemetery held for the purpose of sepulture. (4) All implements of husbandry. (5) All tools, apparatus and books belonging to any trade or profession. (6) The family library and all family portraits and pictures. (7) Five milch cows and their calves. (8) Two yoke of work oxen with necessary yokes and chains. (9) Two horses and one wagon. (10) One carriage or buggy. (11) One gun. (12) Twenty hogs. (13) Twenty head of sheep. (14) All saddles, bridles and harness necessary for the use of the family. (15) All provisions and forage on hand for home consumption. (16) All current wages for personal services."

The majority opinion cites in support of the conclusion reached many authorities; but I think none of them support, or tend to support, the conclusion reached when properly construed, except the case of Nelson v. Fightmaster, 4 Okl. 38, 44 Pac. 215, for the following reasons:

In the case of Stirman v. Smith (Ky.) 10 S. W. 131, Justice Holt, in construing the exemption statutes of Kentucky, simply held that one cow and calf and one heifer were exempt under a statute exempting "two cows and calves." The owner owned only one cow and calf and two heifers.

In the case of Cobbs v. Coleman, 14 Tex. 594, Chief Justice Hemphill held that a horse, saddle, and bridle, as well as martingales, were exempt under the then law (and they would be now). There is language in this opinion, however, from which a conclusion might be drawn that the saddle, bridle, and martingales were held exempt because the horse would be of but little use to the owner without them; but the opinion clearly shows that there were other provisions of the exemption statute then in force which fully covered the saddle, bridle, and martingales, aside from the statute which exempted the horse.

In Dearborn v. Phillips, 21 Tex. 449, Chief Justice Hemphill simply held that a horse and rope were exempt, citing the case of Cobbs v. Coleman, supra, as authority for the holding.

In Robinson v. Robertson, 2 Willson, Civ. Cas. Ct. App. § 254, Judge Willson holds a jackass to be a horse, and therefore exempt under the statute exempting a horse, quoting the definition given by Webster of an ass as follows: "A quadruped of the genus equus; that is, equus asinus."

In Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, 5 Am. St. Rep. 53, Judge Stayton held a piano exempt under the household and kitchen furniture clause of the exemption law. In discussing the question of the proper construction to be given exempt laws, Judge Stayton refers with approval to a decision by the Supreme Court of Wisconsin, wherein that court had held a piano not exempt; but he calls attention to the language of the exemption law of that state, showing that certain articles of household furniture,

not naming a piano, were named as exempt, and then the law proceeds to further use this language: "And all other household furniture not herein enumerated, not exceeding $250.00 in value." The reason the Wisconsin court gave for the holding the piano not exempt was that, as a piano usually costs more than $250 and was not included among the articles first mentioned, it could not be presumed to be included under the clause above quoted.

In Bank v. Robinson, 124 S. W. 177, Chief Justice James held a diamond ring, being worn by the owner, exempt under the "wearing apparel" clause of the exemption law.

In Parker v. Sweet, 127 S. W. 881, Justice Speer held that an automobile was exempt as a "carriage" under our exemption laws and cites Webster's definition of the word "carriage" in support of his conclusion.

In Dow v. Smith, 7 Vt. 465, 29 Am. Dec. 202, the court held that a heifer with calf was a "cow" under the Vermont statute exempting "a man's last cow."

In Freeman v. Carpenter, 10 Vt. 433, 33 Am. Dec. 210, Chief Justice Williams held that a two year old heifer not with calf, and which had never had a calf, was a cow under the Vermont statute exempting "a man's last cow."

In Carruth v. Grassie, 11 Gray (Mass.) 211, 71 Am. Dec. 707, Chief Justice Shaw holds that a 20 months old heifer was a cow under the statute exempting "one cow."

In Kennedy v. Bradbury, 55 Me. 107, 92 Am. Dec. 572, Chief Justice Appleton held that a colt was exempt under the Maine statute exempting "one pair of working cattle, or instead thereof one or two horses, not exceeding in value $200.00"; the evidence showing the owner owned no other horse or cow, and that the colt was worth less than $200, simply holding that the colt was a horse.

In Berg v. Baldwin, 31 Minn. 541, 18 N. W. 821, Justice Mitchell holds that two two year old steers owned by a farmer living on a government claim having no other kind of animals, and keeping them to use as a team, were exempt, though the evidence did not show whether or not they had been broken to work; the evidence showing however, that they could be used for light work.

In Mallory v. Berry, 16 Kan. 293, Justice Brewer held that one steer was exempt, though unbroken, the owner only owning one horse and this steer, though he had contracted for two steers and had been able only to pay for one at the time of the levy and afterwards paid for the other and had possession of him when the suit was tried; the owner being a farmer and intending the steer for work as a work ox. The law of Kansas exempted "two cows, ten hogs, one yoke of oxen and one horse or mule."

In Mundell v. Hammond, 40 Vt. 641, two steer calves, less than a year old, were held to be exempt under a statute exempting "a yoke of oxen or steers."

This disposes of all the authorities cited by the majority as sustaining the holding made by it, except the case of Nelson v. Fightmaster, and I think that none of the above authorities tend to support the holding made by the majority, in that each article held to be exempt in each of said cases comes clearly within some definition recognized by lexicographers as being the thing named in the statute as being exempt, and the holding in no one of said cases is made to depend upon the proposition that the court thought that the welfare of the owner required it to be exempt, but in each case is made to rest on the construction of the language used in the statute construed, by giving the words used a meaning recognized by standard lexicographers.

I am thoroughly convinced that sound public policy requires liberal exemption laws, and further that our courts give a liberal construction to the language used in such laws, looking to the benefit to the citizen sought to be provided therein; but lawmaking is, under our system of government, within the legislative province and not within the province of the judicial department, and if the language used by the Legislature, when fairly and liberally construed, fails to exempt articles which a court might think as a matter of sound policy should be exempt, the court is not authorized to exercise the power of construing the statute to meet something that should have been done but which has not been done, but should leave the people to go to their legislative department for relief, as courts are to construe laws, not make them.

Personally, I think it would be in keeping with sound public policy for our Legislature to have expressed the exemption under consideration in substantially the following language: "Ten head of cattle," or "five cows and calves"—leaving the owner to select that number in such way as would in his judgment be of most service to him and his family. But the law does not so read. It says: "Five milch cows and their calves."

That courts should give to a statute the meaning of the terms used and not ingraft something on the statute not warranted by the language used, or take something from it that is there, to make it apply to a certain subject, see Howard v. Illinois Central Railway Company, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, being the case in which the Federal Employer's Liability Act (June 11, 1906 c. 3073, 34 Stat. 232 [U. S. Comp. St. Supp. 1909, p. 1148]) was held void.

Article 2395, hereinbefore copied, clearly shows the Legislature has named the class of persons entitled to the exemption, and has specifically designated the kind of property and the number or quantity of articles thereof exempted. Thus, under subdivision

2, not all furniture is exempted, but all "household" and "kitchen furniture." Under subdivision 3, not any lot or lots in a cemetery are exempt, but only those "held for the purposes of sepulture." Under subdivision 4, not all implements are exempt, but all implements of "husbandry." Under subdivision 5, not all tools, apparatus, or books are exempt, but all tools, apparatus, or books belonging to any "trade" or "profession." Under subdivision 6, not a library and portraits and pictures are exempt, but the "family" library and all "family" portraits and pictures. Under subdivision 7, not five cows and calves are exempt, but five "milch" cows and "their" calves. Under subdivision 8, not four head of cattle nor two yoke of oxen with necessary yokes and chains are exempt, but two yoke of "work" oxen, with necessary yokes and chains. Subdivisions 9, 10, 11, 12, and 13 appear to be couched in such language as to have no limitation except as to the number and that the articles belong to the family. Subdivision 14 does not exempt all saddles, bridles, and harness that might belong to the family, but those "necessary for the use of the family." Subdivision 15 does not exempt all provisions and forage on hand, but all provisions and forage on hand "for home consumption." Under subdivision 16, not all wages for personal services are exempt, but all "current" wages for personal services.

Our courts have held in many cases that the debtor cannot have exempted to him other property not made exempt under the statute, in lieu of articles which the statute does exempt and which he may not own, thus clearly showing that it is the purpose of the law to exempt the articles named and none other, and while it has always been the policy of our courts to give to our exemption laws a liberal construction, looking to the protection of the citizen's property, within the spirit under the letter of the law, we have found no case where either our courts or the courts of any other state have held to be exempt any property which the wording of the law under some definitions recognized by lexicographers, when applied to the words used in the statute, did not render the property exempt, except the Oklahoma case hereinbefore and hereinafter referred to.

In passing upon this question under our exemption laws, Justice Brown, speaking for our Supreme Court, in the case of Simmang v. Pennsylvania Fire Insurance Co. et al., 102 Tex. 39, 112 S. W. 1044, 132 Am. St. Rep. 846, holds that "tools" nor "apparatus" as used in subdivision 5 of article 2395, herein copied, could not be held to apply to a lunch counter, back counter, shelving, safe, stools, stove, fans, cash register, ice box, crockery, tableware, linen, knives, forks, or kitchen utensils used by a restaurant keeper in his trade or profession as such, though used, designed, and intended as well as necessary for the purpose of conducting said business,

and though being all of that character of property owned by said restaurant keeper. In the opinion it is admitted that the keeping of the restaurant was a trade in the meaning of the vocation for which the articles in subdivision 5 are exempted, but it was held that the articles did not come within the meaning of the qualifying words "apparatus" nor "tools."

In the case of Nelson v. Fightmaster, the Oklahoma court placed the same construction on the Oklahoma exemption statute as has been placed on our statute in the majority opinion, and the Oklahoma statute reads, as to subdivision 7, just as does our own, and I feel sure that the Oklahoma law in this particular was patterned after ours, as it is a more recent law, and I have found no other state laws which read on this question as does ours. I have also been unable to find where our own courts have ever construed subdivision 7 with reference to the question now under consideration, or where the courts of any other state have construed a statute reading as does ours in subdivision 7, except that of Oklahoma in the decision under discussion; and as the cases cited by the Oklahoma court in support of its conclusion are not in point (they being the same cited in the majority opinion), and I think do not support the conclusion reached, and I feel that the reasoning on which it is based is not sound, I cannot follow same. If Oklahoma had first adopted the law in the language under consideration, and then so construed it, and thereafter our Legislature had passed our law, I would follow the decision of the Oklahoma court on the idea that it had been adopted by our Legislature with the construction thereon placed by the Oklahoma court.

As a matter of history, of the habits and customs of our people in Texas, including the kind of milch cows they used until recent years, and when this statute was passed, we know that, for such cows as were then used by our people to continue to give milk, their calves must continue with them; hence the exemption of "their calves" in our statute, not because of the monetary value of the calves, but to enable the family to get milk —the ultimate end the Legislature evidently had in view. The cows themselves were not exempted because of their monetary value as a matter of market, for, if this had been the purpose, beef steers would have been worth more money; but the purpose of the Legislature was to enable the family to get milk. Hence "milch cows" are exempted with "their" calves, not cows and "their" calves. Webster defines "milch" to mean giving milk. Hence a "milch cow" must mean a cow giving milk. Subdivision 7 therefore evidently means five cows "giving milk" and "their" calves.

The fact that the Legislature used the word "milch," under all the circumstances, unquestionably shows that they used it in its

proper sense and as a qualifying term, designating specifically the kind of cow that was to be exempt.

If A. were to sell B. a "milch cow," B. not having seen her, and A. were to tender to B. a three year old heifer, or a cow of any age, that had never been in milk, and had never had a calf, would any one contend that B. could be compelled to take the cow as being in compliance with his contract? I think not.

There is another reason why I think the language used in our statute not susceptible of the construction given it in the majority opinion, and that shows it should be construed as I contend, and that is that Texas is a comparatively new state, many of her sister states having had for many years statutes exempting a certain number of "cows" to a family without any qualifying word as to the age or condition of the cow, such as our Legislature has used in our statute, and the courts of many other states, as shown in this opinion, have construed their statutes to authorize the exemption of the number of head of she cattle called for in the law without any other qualification, and we must presume our lawmaking power was familiar, at least to a degree, with the statutes of other states on this question, as well as the construction their courts had placed thereon, and yet our Legislature, in the light of these conditions, has said that a family in this state shall have exempt five "milch" cows and "their" calves. The construction contended for is most clearly borne out by Judge Brown in the case of Simmang v. Insurance Company, above quoted from.

The amount involved in this case is small; but the questions involved are very important, both because it is proper for the people of this state to know what of their property under the law is exempt, that they may have the Legislature amend same if it is not as they want it, and because, as I view the language of the law, to go with the majority in this case amounts to judicial legislation, which ought never to be indulged in by a court or judge.

For reasons set out, I think the three heifers in controversy, nor either of them, were exempt at the time they were levied upon, in that, while they could properly have been held to be cows, they were not "milch" cows.