**54**

In re Charles R. WALDEN, Jr., and
Laura H. Walden, Debtors.

Bankruptcy No. 91–13216–LK.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Aug. 28, 1992.

Ronald E. Ingalls, Alvis, Carssow, Cummins, Hoeffner & Botsford, P.C., Austin, Tex., for debtors.

Harvey D. Caughey, Austin, Tex., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARRY E. KELLY, Chief Judge.

The Trustee objected to certain property claimed as exempt by Charles R. Walden, Jr. and Laura H. Walden (hereafter the "Debtor"). This court is asked to determine whether a recent amendment of Article 21.22 § 1 of the Texas Insurance Code exempts the property at issue, which is an annuity. The annuity was substituted for other collateral used to secure payments to the Debtor under the terms and conditions of a non-competitive agreement. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (K). The following represent the court's Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.

### BACKGROUND FACTS

In October, 1986, Golden Era Services, Inc., ("Golden Era") began to negotiate to acquire the business operations and related assets of Cook–Walden Funeral Home and its affiliated funeral homes and cemeteries (hereafter "the business"). The principals with whom Golden Era dealt with were Charles Walden, Sr., Mrs. Hortense Fisher, and Charles Walden, Jr. Key provisions of the purchase agreement involved Golden Era acquiring ownership of stock, real estate and other assets of the business. This Debtor was to receive $111,132.07 for his stock ("DX3"); was to enter into an employment agreement starting January 1, 1987, with a monthly salary of $6,250.00 for ten years ("DX4"); and was to enter into a non-competitive agreement with the Debtor agreeing not to compete for a period of forty years while receiving an additional aggregate sum of $150,000.00 cash, plus $4,000.00 a month for 200 months beginning January, 1987. He also was to receive 50,000 shares of Series C, preferred stock of Golden Era, par value $1.00 for a sales price of $50,000.00, and a redemption

agreement calling for mandatory redemption by Golden Era over stated intervals. Similar terms were offered to the other participants.

The non-competitive agreement was amended on or about November 26, 1986, to provide for a Deed of Trust Lien on certain real estate and a security interest in the name "Cooke–Walden Funeral Home" to secure payments due to the Debtor.

After the sale, the Debtor commenced to work for Golden Era until on or about October 2, 1987, at which time he was "ousted". He along with his father, Charles R. Walden, Sr., and Mrs. Fisher were removed from the premises because of allegations that certain funds were missing, that the Debtor was responsible for running the business, and that his failure to report missing funds and to apprehend culpable parties was a breach of his fiduciary responsibility. (DX7).

After removal, the Debtor, his father and Mrs. Fisher, commenced a lawsuit against Golden Era, Cooke–Walden Funeral Homes, Inc., and a principal therein by filing their original petition in the 98th District Court of Travis County, Texas, in Cause No. 431,043. The petition alleged that the Defendants had breached or anticipatorily breached their employment agreements wrongfully and without just cause or legal justification. The Debtor asserted damages of $693,750.00 for the breach of his contract. The Debtor further alleged damages because of the breach of his non-competitive agreement in the additional amount of $764,000.00. The other two plaintiffs alleged that the breach of Debtor's non-competitive agreement constituted a breach of their non-competitive agreement because "... all three plaintiffs entered into the non-competitive agreement as part of the sale of the family business, Cooke–Walden Funeral Homes, with the understanding and belief. that all would benefit from said non-competitive agreements, which the Defendants have breached."

In addition to actual damages all of the plaintiffs sought exemplary damages which they alleged to be not less than three times actual damages sustained. (DX8).

The lawsuit was settled in 1988. Charles Walden, Jr., was to receive the following:

a. $61,500.00 in equal monthly installments of $5,125.00 over 12 months, beginning April 30, 1988, until paid in full;

b. Cooke–Walden was to recommence payment to him under his non-competitive agreement commencing April 30, 1988 "... in the same manner as provided therein. Said agreement *shall be modified to allow Cooke–Walden to substitute a pre-paid annuity issued by American General, or comparable mutually agreeable insurance company, providing security comparable in value and providing the same monthly payments, to the then outstanding liability under said agreement* at the time Cooke–Walden so elects."; (emphasis added) and

c. Debtor was to return the 50,000 shares of Golden Era Series C stock and receive $275,000.00 over 12 months in equal monthly installments of $22,916.67 commencing April 30, 1988.

All three plaintiffs also agreed to resign their employment with Cooke–Walden effective October 2, 1987, and to execute mutual releases of claims. (DX9)

Documents were in fact executed between the parties to consummate the settlement agreements including a non-interest bearing promissory note in the original principle sum of $275,000.00 made payable to the Debtor in monthly installments (DX10); execution of a second amendment to the non-competitive agreement with the Debtor (DX11) and execution of mutual releases (DX12).

The substitution of collateral which was referred to in the settlement agreement (DX9) was effectuated in or about October, 1988. (DX13, DX14).

## ISSUES PRESENTED

The court is asked to determine whether the "agreement" with Charles Walden, Jr., with the ultimate substitution of a pre-paid annuity providing the same monthly pay-

**56**

ments as the then outstanding liability under the non-competitive agreement is exempt under article 21.22 § 1 of the Texas Insurance Code. The Debtor argues that it is exempt either because the annuity represents a "policy of insurance issued by a life, health or accident insurance company, including mutual and fraternal insurance ..." or represents a "plan or program of annuities and benefits in use by any employer ...".

## FINDINGS OF FACT

There was no real testimony elicited at the trial of this cause. The Debtor's exhibits 1—14 were stipulated by the parties and admitted into evidence. The facts recited herein are all contained in those exhibits. Additional factual stipulations were made as follows:

a. Payment of $105,425.04 was received by Charles R. Walden, Jr. in the form of a check pursuant to seller's closing statement, exhibit D-3;

b. The Debtor began his employment with Golden Era Services, Inc., on January 1, 1987 and remained employed until October 2, 1987;

c. The application form for the annuity was send to the Debtor by Golden Era Services, Inc.; and

d. The money to fund the annuity (i.e., the premium payment) came from Golden Era.

The annuity was properly listed and claimed as exempt on Schedule C of the Schedule of Assets and Liabilities. The authority for claiming the exemption is Article 21.22 of the Texas Insurance Code. The Trustee's objection to the claimed exemption was timely.

In addition to these facts which are not disputed, the court makes the following findings:

1. The annuity does not represent a policy of insurance issued by a life, health or accident insurance company.

2. The substitution of the annuity at issue was not done pursuant to any plan or program of annuities and benefits in use by any employer of the Debtor Charles R. Walden, Jr.

## CONCLUSIONS OF LAW

1. In a prior opinion interpreting article 21.22 § 1 of the Texas Insurance Code, the bankruptcy court for the Northern District of Texas was asked to determine whether or not the cash surrender value of a life insurance policy was exempt under the language purporting to exempt "all lump sum payments".[1] Today's version of that same provision would appear to exempt "lump sum payments", including cash surrender values of life insurance. An important part of that decision however, remains applicable to the issue before this court. The court analyzed what is meant by the phrase "... any policy of insurance issued by a life, health, or accident insurance company ...". It addressed all three types of policies, stating that:

> "payments made under an 'insurance policy' are those made on the occurrence of a future contingency for which the insured and the insurance carrier have contracted. Under a health insurance policy, the carrier must pay when the insured become ill and incurs expenses related to his or her illness. Under an accident insurance policy, the carrier must pay for damages caused by certain accidents." *Brothers*, at p. 85.

2. Accident insurance has also been defined in *In re Powers*, 112 B.R. 178, 180 (Bankr.S.D.Tex.1989) ("accident insurance refers to personal insurance; in other words, the policy covers financial loss resulting from bodily injury to a specified insured or beneficiary," citing Appleman, *Insurance Law and Practice*, Section 24 (1981)).

3. An annuity has been described as "... essentially a form of investment which pays periodically during life of an annuitant or during terms fixed by contract rather than on occurrence of future contin-

---

1. *In re Brothers*, 94 B.R. 82 (Bankr.N.D.Tex. 1988).

gency." *In re Howerton,* 21 B.R. 621, 623 (Bankr.N.D.Tex.1982).

4. If the annuity is not a "policy of insurance issued by a life, health, or accident insurance company," the Debtor alternatively argues that the annuity was used by the "employer" as part of a plan to free up collateral and that the agreement with the Debtor was part of a broader plan of annuities which included Charles Walden, Sr., and Mrs. Hortense Fisher. The evidence, however, undisputedly shows that the Debtor was removed from his employment on or about October 2, 1987; that the employment agreement was then breached or anticipatorily breached (DX8 ¶ 5); the annuity was part of a settlement of litigation which had sought damages including court costs, attorney's fees and exemplary damages (DX8, ¶ 7); and that Debtor's employment was terminated *effective October 2, 1987,* (DX9, ¶ 9); and the annuity itself was not effectuated till on or about October 13, 1988 (DX14).

### CONCLUSION

The court finds that the Trustee's objection to the claimed exemption of the annuity at issue is well founded. The annuity at issue is not a policy of insurance issued by a life, health or accident insurance company, nor does it represent a plan or program of annuities and benefits in use by any employer. By separate order of even date herewith this court will sustain the Trustee's objection.

