**In re Talmadge Wayne TINSLEY, Debtor.**

**Bankruptcy No. 396–35101–SAF–7.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 17, 1997.

Troy D. Phillips, Glast, Phillips & Murray, Dallas, TX, for Debtor.

Ginger A. Tye, Bellinger & DeWolf, Dallas, TX, for PNL Texas, L.P.

Robert R. Bell, Mullin, Hoard & Brown, LLP, Amarillo, TX, for Caprock Investment Corp.

Christopher J. Moser, Quilling, Sellinger, et al., Dallas, TX, for Robert Newhouse, Trustee.

Ramona Notinger, Dept. of Justice–Tax Division, Dallas, TX, for I.R.S.

Mary A. Daffin, Barrett, Burke, Wilson, et al., Houston, TX, for Guaranty Federal Bank.

## *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Talmadge Wayne Tinsley, the Chapter 7 debtor, filed a designation of homestead and a motion for valuation of the non-exempt acreage. PNL Texas, L.P., and Caprock Investment Corp., holders of judgment liens, object to both the designation and the valuation. Robert Newhouse, the Chapter 7 trustee, observes that the value of the non-exempt acreage is less than the debt secured by judgment liens on the property. If the trustee cannot implement an agreement with the debtor and the holder of the first in priority judgment lien, he proposes to abandon the estate's interest in the non-exempt acreage. The court conducted an evidentiary hearing on April 2, 1997.

■■■ The Bankruptcy Code provides, that, upon the commencement of a bankruptcy case, all legal and equitable interests of the debtor in property become part of the bankruptcy estate. 11 U.S.C. § 541; *Walden v. McGinnes (In re Walden),* 12 F.3d 445, 448 (5th Cir.1994). A debtor may, however, exempt certain property from the es-

tate, placing that property beyond the reach of claims of creditors. 11 U.S.C. § 522; *Walden,* 12 F.3d at 448. Once the court has declared the property exempt, it is no longer part of the bankruptcy estate.

■■■ . Section 522(b) permits a debtor to exempt property under either the federal exemption enumerated in § 522(d), if the state authorized, or those available under state or other federal law. Texas has authorized debtors to select the federal exemptions under § 522(b)(1). *NCNB v. Volpe (In re Volpe),* 943 F.2d 1451, 1452 (5th Cir.1991). Accordingly, Tinsley could elect the "federal" exemptions specified in § 522(d) or the "state" exemptions under § 522(b)(2). Tinsley elected the "state" exemptions. Under Texas law, his homestead is exempt. Texas Property Code § 41.002(a). Thus, the homestead is no longer property of the estate.

Tinsley owns real property described locally as 4656 Meadowood Road, Dallas, Texas, comprised of about 3.1 acres. One acre of that property qualifies as his Texas homestead. Tex. Const. art. XVI, § 51. The party asserting a homestead right may voluntarily designate his exempt one acre and segregate it from the excess. Tex. Prop. Code Ann. § 41.005(b) (Vernon Supp.1994). *Crowder v. Benchmark Bank,* 889 S.W.2d 525, 529 (Tex.App.-Dallas 1994), *aff'd in part, rev'd in part,* 919 S.W.2d 657 (Tex.1996).

Tinsley has filed his designation of the one acre as his homestead. Exhibit A. PNL and Caprock object to the gerrymandered nature of the designation. In response, Tinsley orally moved the court to eliminate a one foot parameter designation. The court accepts the oral modification.

■■■ Because Texas law favors homesteads, a bankruptcy court applying Texas law must liberally construe the state constitutional and statutory provisions that protect homestead exemptions. *Bradley v. Pacific Southwest Bank,* 960 F.2d 502, 507 (5th Cir. 1992). With the oral modification, Tinsley's designation includes his house with pool and surrounding landscape and an access driveway. PNL and Caprock submit authority from other states which do not inform the court's decision on the application of Texas

law. Tinsley's designation as orally modified is accepted by the court. That designated property is therefore no longer property of his bankruptcy estate.

Caprock and PNL argue that the designation conflicts with Dallas ordinances regarding the use of the property as platted. The court need not consider that matter. First, if the same person buys the exempt and non-exempt portions of the 3.1 acreage, the issue of compliance with Dallas ordinances and plat restrictions becomes moot. Second, if different persons purchase the exempt and non-exempt portions, this court need not decide the permitted use. *See, e.g., In re Starns,* 52 B.R. 405, 412 (S.D.Tex.1985) (King, J., sitting by designation).

Tinsley would like to sell the entire 3.1 acres. The proceeds from the exempt portion would be used to pay the mortgage and the Internal Revenue Service's lien on the homestead. The proceeds from the non-exempt portion would be applied to the judgment liens.

On January 9, 1997, Tinsley filed a motion to sell the property for a total of $3.875 million. The court set a hearing on the motion to sell on February 3, 1997. However, the sale fell through and Tinsley withdrew his motion. Tinsley now proposes to sell the property for $3.550 million. A motion for court approval of the sale of the non-exempt, bankruptcy estate owned 2.1 acres has not been filed, although the trustee proposes to abandon the estate's interest for $15,000. Apparently, the holder of the first in priority judgment lien has offered the trustee $15,000 for his support of the transaction. Whatever the value of the excess acreage, the trustee contends it will never yield value for the unsecured creditors. A motion to abandon has not been filed.

Tinsley has filed the motion for valuation of the non-exempt acreage. Tinsley asserts that the 2.1 acres should be valued at $50,-000. Under his proposed sale of the entire acreage for $3.550 million, after closing costs, Tinsley would pay the mortgage and IRS lien, totaling approximately $1.6 million. He would deliver $50,000 to the judgment lien creditors for their interest in the non-exempt acreage. He would keep the rest.

The debt secured by the first in priority judgment lien totals approximately $400,000, and has recently been purchased by an associate of Tinsley. Caprock holds the second in priority judgment lien, which secures a debt totaling approximately $200,000. PNL holds the third judgment lien which secures a debt totaling in excess of $33 million. There may be another lien of approximately $27,000 ahead of Caprock and PNL.

Caprock and PNL contend that the Tinsley value of $50,000, coupled with his designation of the exempt acre, amounts to a fraud on the judgment lien holders. Tinsley responds that the impact of the exercise of his homestead rights need not be considered when determining the value of the non-exempt acreage. Indeed, the Fifth Circuit has observed that the court must uphold and enforce Texas homestead laws even under circumstances when the court might unwittingly assist a dishonest debtor in wrongfully defeating his creditor. *Bradley,* 960 F.2d at 507. However, Tinsley's exercise of his homestead rights may have implications for other proceedings in a bankruptcy case. The homestead designation does not prevent the creditors from litigating the effect of the exercise of homestead rights in a pertinent contested matter or adversary proceeding.

 On a motion for valuation, the court must determine the value of the non-exempt acreage after the debtor's designation of the exempt acre. Section 506(a) of the Bankruptcy Code provides that a motion for value may be used to determine the value of secured creditors, here the judgment lien holders, interest in property. The court must determine value in conjunction with the purpose for the motion. The statute directs: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

Here, the motion for valuation had originally been brought in conjunction with a motion to sell. That proposed sale did not materialize. The request for a hearing on the motion had been withdrawn by Tinsley.

That amounts to the withdrawal of the motion. No motion to sell the non-exempt bankruptcy-estate owned portion of the property is pending. No motion to abandon the estate's interest in that property is pending. Under § 506(a), consideration of the motion for valuation is premature.

The evidence adduced at the hearing on April 2, 1997, demonstrates why Congress directed that value be determined in conjunction with a hearing on the disposition of the property. Lyle F. Gallagher, Tinsley's expert appraiser, testified that the non-exempt portion should be valued at $50,000. Plat restrictions may require single family residences on one acre for the subject property. Given the debtor's designation, Gallagher questioned whether any of the remaining portions could be used consistently with the plat restrictions. The City of Dallas has not been petitioned for an exception.

Gallagher concluded that the property would only have value to an adjoining owner. An adjoining owner may be interested in the property for aesthetic value, or the adjoining owner may desire additional acreage along the creek. But the land immediately adjacent to the creek is within a flood zone, limiting its use. Ultimately, Gallagher concluded that the adjoining owner would pay $50,000 for the tennis court and adjacent land. He opined that no other market would exist for the non-exempt acreage.

PNL's witness, Mark Bond, critiqued Gallagher's appraisal. The 3.1 acres, if undeveloped land, would have a value of $1.5 million. The non-exempt portion of the land would be undeveloped. Bond suggested that the undeveloped market value be used to value the non-exempt acreage. That would result in a $1 million value. Tinsley observed, however, that the market has not produced a buyer for the non-exempt portion; only, for the entire 3.1 acres. Also, the appraisal of undeveloped land assumes its use consistent with plat restrictions.

Tinsley also argues that the value cannot be determined by pro-rating the value for the entire 3.1 acres. In *Mallou v. Payne & Vendig*, 750 S.W.2d 251, 255–256 (Tex. Ct. App.–Dallas 1988, no writ), the Texas court instructed that before a lienholder forces a sale of the homestead, the exempt portion must be ascertained and, if possible, segregated from the homestead. The debtor would select the portion with the home. Its value cannot be prorated across the entire acreage. Otherwise, a portion of the exempt homestead would be used in effect to pay creditors in contravention of the Texas Constitution. *Mallou*, 750 S.W.2d at 256.

Neither Caprock nor PNL suggest that the court pro-rate the proposed $3.550 million purchase price across the entire 3.1 acres. That would result in a value of $2 million for the non-exempt portion. Rather Caprock and PNL suggest that the court use the undeveloped vacant land value of $1.5 for the 3.1 acres. That would result in a value of $1 million.

But the court must determine value in light of the proposed disposition of the property and in conjunction with a hearing on the proposed disposition. The proposed buyer has not testified. Tinsley is asking the court to assume that the buyer would pay $3.5 million for the exempt acre, and only $50,000 for the trustee's 2.1 acres. Based on a judicial hunch, the court cannot imagine that any buyer would pay $3.5 million for a house on an acre of land in a prime area of Dallas, when the surrounding 2.1 acres are owned by a Chapter 7 trustee, who cannot maintain or develop the land, but who will eventually transfer it to someone, not necessarily the buyer of the homestead. The court's judicial hunch would be that to the buyer of the acre, the remaining 2.1 acres has considerable value. Tinsley urges the court not to consider the value of the 2.1 acres to the buyer of the homestead. But, by doing so, Tinsley asks the court to ignore the Bankruptcy Code which, at § 506(a), directs the court to determine value in conjunction with the proposed disposition. Although based on a judicial hunch, without the 2.1 acres, the buyer may not buy.

To the buyer of the one acre, the value of the 2.1 acres will more than likely approach the value urged by the judgment lien holders rather than the $50,000 asserted by the debt-

or. Indeed, to make certain that he obtains the entire 3.1, the value of the non-exempt portion would more than likely be in the range of $700,000–$800,000.[1]

The court recognizes that it writes on a judicial hunch. So, the court returns to the instruction of the Bankruptcy Code. If the court must value the non-exempt portion, it must do so in conjunction with the proposed disposition. If the disposition involves the sale of the entire 3.1 acres, the court must consider the value of the non-exempt portion to the buyer. After all, an arms-length buyer represents a real, not hypothetical, market. Absent that evidence, consideration of the motion for valuation is premature.

If the disposition involves abandonment to the debtor, the court must consider the value to the debtor who may sell the entire 3.1 acres in a market with a buyer at $3.550 million.

The court will carry the motion for valuation. The court will resume the hearing on the motion in conjunction with a hearing on a motion to sell filed by the trustee or a motion to abandon filed by the trustee. The trustee may not dispose of the non-exempt property without a court order. The one acre homestead is no longer property of the bankruptcy estate.

Based on the foregoing,

**IT IS ORDERED** that the designation of homestead by Talmadge Wayne Tinsley, the debtor, as orally modified on April 2, 1997, is accepted by the court. The homestead based on the designation, as orally modified, is no longer property of this bankruptcy estate. Tinsley shall file an amended designation for the record reflecting the oral modification.

**IT IS FURTHER ORDERED** that the motion for valuation of the non-exempt acreage is carried on the court's docket.

---

1. The court encourages the parties to consider the fairness of that valuation. Of a $3.550 million purchase price, $2.7 would be attributed to the homestead and $800,000 to the non-exempt portion. After payment of pro-rated closing costs, Tinsley would pay the $1.6 million of mortgage and IRS debt securing the homestead, leaving approximately $900,000 for his use. Not bad for a man who wants a discharge. This court has continually posed the question of why Texas law or the Bankruptcy Code should permit even that result. But, obviously, that is a call for the respective legislative branches of the state and federal governments. The court recognizes that it must apply the statutes as it finds them. *King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir.1991). The judgment lien creditors would obtain approximately $700,000 after payment of the prorated closing costs and a trustee fee under 11 U.S.C. § 506(c). That would permit payment in full through Caprock with a distribution to PNL.