**In re David Lynn ALEXANDER, Lyndia Kaye Alexander, Debtors.**

**Bankruptcy No. 598–50745–7.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Dec. 10, 1998.

Max R. Tarbox, Lubbock, TX, Chapter 7 Trustee.

Wendy McDowell, Boren & Waggoner, Lubbock, TX, Coleman Young, Templeton, Smithee, Hayes, Fields & Young, Amarillo, TX, for Debtors.

## MEMORANDUM OF OPINION ON CLAIM OF EXEMPTION TO A WRONGFUL DEATH SETTLEMENT/ANNUITY

JOHN C. AKARD, Bankruptcy Judge.

David Lynn Alexander and Lyndia Kaye Alexander (Debtors) claim as exempt the proceeds of a settlement which they received as a result of the tragic death of two of their children. They entered into a structured settlement which is being paid to them in the form of an annuity. Max R. Tarbox, the Trustee–in–Bankruptcy, objected to the claim of exemption. The court finds that the claim of exemption must be allowed.[1]

### FACTS

In April 1989 two of the Debtors' children, David Lynn Alexander, II and Wendy Jeannette Alexander, were killed in an automobile accident while on their way to school. The Debtors alleged that Robert H. Krauter, Jr., an employee of Unique Field Services, veered across the highway and collided head-on with the vehicle which the Debtors' son, David, was driving. On July 27, 1989 the Debtors (as Plaintiffs) entered into a settlement agreement and release with Mr. Krauter, Unique Field Services (Defendants), and Unique's insurance carrier which provided for the following payments:

a. An initial payment of $350,000.

b. The sum of $1,500 per month for five years beginning August 15, 1989.

c. The sum of $2,000 per month for five years beginning August 15, 1994.

d. The sum of $2,500 per month for five years beginning August 15, 1999.

e. The sum of $3,000 per month for five years beginning August 15, 2004.

f. The sum of $3,450 per month beginning in 2009 and continuing for the remainder of the Debtors' lives, but for not less than five years.

g. The sum of $200,000 on July 15, 2014.

Should the Debtors die before receiving all of the payments under the agreement, they designated their daughter, Dundie Alexander McInroe, as the beneficiary with Timm Joe McInroe as the alternate beneficiary.

The agreement provided that the Debtors "are and shall be a general creditor to the Defendants and/or the insurer" (paragraph 3). The Debtors cannot accelerate, mortgage or assign their payments under the settlement agreement. The agreement was made pursuant to § 130(c) of the Internal Revenue Code of 1986 and is commonly referred to as a structured settlement. It provided that the Defendants and the insurer could make a "qualified assignment" to Capital Assignment Corporation (Assignee) which would assume the obligation of making the payments. The assignment released the Defendants and the insurer from further liability under the settlement agreement. In paragraph 5, the agreement stated:

*Rights to Purchase an Annuity.* The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Commonwealth Life Insurance Company ("Annuity Carrier"). All rights of ownership and control of such annuity policy shall be vested in the Assignee. The Assignee may have the Annuity Carrier mail payments directly to the Plaintiffs.

The Assignee purchased the contemplated Single Premium Immediate Annuity for the benefit of the Debtors. The terms of the annuity match the terms of the settlement agreement except for the initial $350,000 payment. The Assignee is listed as the owner of the annuity. At the time of the issuance of the annuity, Mr. Alexander was 40 years

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B).

of age and Mrs. Alexander was 41 years of age.

The Debtors live in a rural area near Morton, Texas. Apparently, that is where they lived at the time of the accident. At the time of the accident, Mr. Alexander was employed as a truck driver and Mrs. Alexander was a housewife. The loss of two of their three children was emotionally devastating to them. Mrs. Alexander testified that neither of them have held steady employment since the accident. She had tried to engage in business, but the business failed. She stated that since they live in a rural area, she needed to remain home to take care of Mr. Alexander because he now has periodic mental problems.

The Debtors' statement of income and expenses shows the $2,000 per month payment from the annuity policy and $50 per month which Mrs. Alexander gets from sewing as their only income. Their expenses approximate that amount. However, in response to question 1 of the Statement of Financial Affairs dated May 20, 1998, Mr. Alexander listed income from wages during 1998 in the amount of $1,500, in 1997 $7,976, and in 1996 $5,253. In addition they showed the $2,000 per month payments from the annuity.

The Debtors' schedules show that they own 195 acres in Cochran County, Texas where they live. There is no lien on the property. They have approximately $15,000 of personal property consisting of household furniture, furnishings and vehicles. They valued the annuity at $350,000. The parties agreed that the total payments yet to be made under the annuity total approximately $750,000. In this bankruptcy proceeding, they seek to discharge $134,004.61 of unsecured debt consisting almost exclusively of credit card obligations. Mrs. Alexander acknowledged that some of those obligations were incurred in early 1998 when they went to Nevada for gambling and gold prospecting purposes.

The Debtors claimed the Texas exemptions as permitted by the Bankruptcy Code, 11 U.S.C. § 522(b)(2).

**STATUTES**

The Debtors claim the proceeds of the annuity contract as exempt under Article 21.22 of the Texas Insurance Code which reads as follows:

> [A]ll money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance *or annuity contract* issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer *or individual,* shall:
>
> . . . .
>
> (2) be fully exempt from execution, attachment, or garnishment or other process; [and]
>
> . . . .
>
> (4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.[2]

**DISCUSSION**

The Debtors noted that they are receiving payments under an annuity contract and that under Article 21.22 of the Texas Insurance Code, they are entitled to exempt that stream of payments. The Trustee argued that under the terms of the settlement agreement, the Debtors are creditors of the Defendants and that the annuity is simply a method of securing the obligation of the Defendants to the Debtors created in the settlement agreement. He asserted that the annuity does not change the debtor/creditor relationship. Therefore, the benefits to the Debtors of that relationship should be paid to the bankruptcy estate for the benefit of the Debtors' creditors.

The Trustee finds support for his argument in the Fifth Circuit case *Young v. Adler (In re Young),* 806 F.2d 1303 (5th Cir.1987). Mr. Young was an attorney who represented a widow and her children in connection with the death of their husband/father on an offshore drilling rig. As part of the resolution

---

2. Article 21.22 was amended, effective September 1, 1998. Tex.Ins.Code art. 21.22 (West Supp.1994). The words and phrases added are italicized above.

of that matter, he entered into a structured settlement for his attorney's fees which provided for an initial payment of $25,000 and monthly payments over a number of years. When Mr. Young subsequently filed bankruptcy, the Trustee objected to his claim of exemption for the annuity. *Id.* at 1304–05. The case was decided under Louisiana law, but Louisiana's exemption for annuity payments appears to be equally as strong as that provided by Texas law. The Fifth Circuit said it should look at the substance of the transaction rather than the form. *Id.* at 1306. The court found that the annuity was simply an account receivable and denied the exemption. *Id.* at 1307.

The Fifth Circuit distinguished Young in *Walden v. McGinnes (In re Walden)*, 12 F.3d 445 (5th Cir.1994), a case involving Article 21.22 of the Texas Insurance Code. The court noted that *Young* was decided under Louisiana law and that the Texas courts had a strong policy of favoring exemptions. *Id.* at 450. Mr. Walden received payments under an annuity policy in connection with a non-competition agreement. The annuity policy was issued in order to secure a release of real property liens which Mr. Walden retained to secure the payments under the non-competition agreement. *Id.* The Fifth Circuit held that the payments were exempt in Mr. Walden's bankruptcy. *Id.* at 452.

Apparently the only Texas case in point is *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372 (Tex.App.—San Antonio 1992, writ denied), *cert. denied*, 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993). When *Daniels* was decided, Article 21.22 of the Texas Insurance Code did not exempt annuities. The case involved a structured settlement of a personal injury claim which was funded by an annuity. The court said:

> While there may be sound public policy arguments for the Legislature to require benefits payable from a structured settlement to be at least partially exempt from garnishment, neither the Texas Legislature nor the United States Congress has chosen to do so. We hold we have no

authority to create a common-law exemption.

*Id.* at 375.

Although the court was not cited any legislative history, at its next session after the *Daniels* decision, the Texas Legislature added the italicized language to Article 21.22 allowing an exemption for annuities by an individual.

■ Article 21.22 of the Texas Insurance Code, as it presently exists, does not limit the term "annuity." The statute does not restrict the source of the funds used to purchase the annuity, nor does it look to the underlying purpose of the annuity. Whether the lack of such limitations is a legislative oversight or an intentional act on the part of the legislature to exempt every annuity regardless of its source or purpose is of no consequence in this case. This court must read the statute as it is written. Texas courts have a strong policy favoring exemptions:

> [O]ur exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant.

*Carson v. McFarland*, 206 S.W.2d 130, 132 (Tex.Civ.App.—San Antonio 1947, writ ref'd) (cited with approval in *Hickman v. Hickman*, 149 Tex. 439, 234 S.W.2d 410, 413–14 (1950) and *Walden, supra* at 448).

## CONCLUSION

■ In light of the strong Texas authority for broad interpretation of exemptions in favor of claimants, and because Article 21.22 of the Texas Insurance Code does not in any way limit the term "annuity", this court finds that the Debtors are entitled to claim the proceeds of the annuity in question as exempt. The Trustee's objection must be de-

nied. See *In re Scott,* 193 B.R. 805, 808 (Bankr.N.D.Tex.1996).

ORDER ACCORDINGLY.[3]

---

**3.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.