## Roy N. Hickman et al v. Hazel Hickman.

No. A-2695.  Decided November 22, 1950.
Rehearing overruled December 20, 1950.
(234 S. W., 2d Series, 410.)

440

*E. M. Davis,* of Brownwood, and *Mark McGee,* of Fort Worth, for petitioners.

The Court of Civil Appeals was in error in holding that the administrators should pay to the surviving widow, the sum of $6945.80 in cash, because, if the trial court was correct in its holding that the money received from a voluntary sale of exempt property continued as exempt property, the widow and her minor child were entitled to its use and benefit only, and that such use should be limited to the widow's lifetime or the lifetime and/or minority of her child, and that the corpus of said amount should be secured by bond for the ultimate return of said amount to the heirs, devisees and legatees of the deceased upon conclusion of the rights to the use of said amount by the widow and her minor child. Hays v. Moore, 144 S. W. 1054; Pace v. Eoff, 48 S. W. 2d 956; Simms v. Hixon, 65 S. W. 36; 13 Texas Jur. 829, sec. 249.

*Gib Callaway,* of Brownwood, respondent.

Hazel Hickman, having been appointed by the court, together with one of the brothers of the deceased, as temporary administrators, and under agreement of all parties, sold certain of the exempt property, the receipts of which was to be in lieu of the property could not have made said sale voluntarily, as

same was sold by them in their official, and not individual, capacity, without the consent of the minor child whose right to receive the said exempt articles in kind could not be defeated by any act of the temporary administrators in selling said articles. Green v. Raymond, 58 Texas 80; Crocker v. Crocker, 46 S. W., 870; Carson v. McFarland, 206 S. W. 2d 130.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Hector H. Hickman died November 26, 1948, leaving as survivors his widow, Mrs. Hazel Hickman, and a daughter seven months old. His will gave all his property to his three brothers, Roy N., I. N. and Bernal B. Hickman, and named them as independent executors.

On January 31, 1949, the probate court appointed Mrs. Hickman and Bernal B. Hickman temporary administrators of the estate pending proceedings for probate of the will, which was being contested by Mrs. Hickman and the daughter.

On March 7, 1949, the will was probated and the brothers qualified as executors. Contestants appealed to the district court.

On April 22, 1949, Mrs. Hickman, for herself and as next friend for her daughter, filed in the administration proceedings an application to have set aside to her and the child a homestead of 200 acres and all the exempt property of the estate. The probate court dismissed this application for want of jurisdiction, and Mrs. Hickman appealed to the district court, which, after a hearing, adjudged to Mrs. Hickman and her daughter a described tract of 200 acres out of a tract of 917.2 acres, which was the separate property of the deceased, as a homestead during the lifetime of Mrs. Hickman or as long as she may elect so to use it or so long as the daughter's guardian, in the event of the death of Mrs. Hickman or her abandonment of the homestead, may be permitted under court orders so to use it. The court further found: (1) that at the time of Hickman's death there was on hand, as his separate property or as the community property of himself and Mrs. Hickman, a large amount of household and kitchen furniture and numerous implements of husbandry; and (2) "that there were on hand five milk cows and their calves, * * * one 1946 International Pick-up which the court finds to be exempt property; * * * all wearing apparel and clothing of every kind, including two gentlemen's diamond rings; seven head of hogs; twenty head of goats, all of which items the court finds the applicants are entitled to have set aside to them as exempt property for their use and benefit." He then

found that some of these exempt articles of a value in excess of $500 were not then among the effects of the deceased, and decreed that Mrs. Hickman be paid $500 in lieu thereof, as provided by Arts. 3486 and 3487, R. C. S., 1925. He found, also, that "since the filing of this application in the County Court, asking that exemptions be set aside to them," the administrators have sold the following exempt property: five cows and four calves for $1103, 20 goats for $90, 7 hogs for $419, a new tractor and attachments for $1125, an old tractor and attachments for $910, a combine for $1000, a 2-wheel trailer for $165, a cream separator for $45, bees for $30; and that Mrs. Hickman and her daughter are entitled to have the total of $4887 paid to them "in the place and stead of said items."

After modifying the trial court's judgment in three minor particulars not questioned here, the Court of Civil Appeals affirmed it. 228 S. W. 2d, 565.

The cause is here with Roy N. Hickman et al., the three brothers, as petitioners, and with Mrs. Hickman and her daughter as respondents.

Petitioners' first point complains of the judgment allowing respondents a money judgment for the exempt articles sold by consent of all parties. They assert that since the sales were voluntarily made by Mrs. Hickman, the money received is not exempt property.

■ There is no dispute that Mrs. Hickman and petitioners did agree to the sale on the theory that it would be for the benefit of all concerned; that it should be made by the two administrators without court order; and that the price received would be considered fair and would not be contested. The testimony, however, is conflicting on what the agreement was as to the effect of the sale, so we must adopt that version which supports the trial court's judgment. It was that the parties "agreed that the money received for the property would take the place of and be in lieu of the items sold, and it would be without prejudice to the rights of anybody concerned."

■ In that situation we see no merit in petitioners' contention. They were sui juris and were presumed to know that respondents were entitled to have the exempt property set aside to them for their use and benefit. Knowing that, they agreed that the items should be sold by the administrators and that the money realized would take their place "without prejudice to the rights of any-

body concerned", which certainly meant without prejudice to the right of Mrs. Hickman and the child to claim the use and benefit of the proceeds. If it did not mean that it meant nothing, from the standpoint of respondents. We see no reason why petitoners should not live up to their agreement. Cases like Whittenburg v. Lloyd, 49 Texas, 633, and Schneider v. Bray, 59 Texas, 668, cited by petitioners, are not contrary to our holding because in them the debtor voluntarily converted exempt property into non-exempt property but without his complaining creditor's participation or consent; so it was properly held that the non-exempt property was subject to execution to satisfy the creditor's judgment.

■ Petitioners next contend that if the trial court was correct in decreeing that the money is exempt, its use should have been limited to the lifetime of Mrs. Hickman and to the lifetime or minority of the child and that respondents should have been required to give security for its ultimate payment to petitioners.

Our discussion of petitioners' first point applies in large measure to this. Having agreed that money, which they surely knew to be both fluid and fugitive, should "take the place of and be in lieu of" the exempt personal property, they must be content with such disposition as the law makes of the personal property itself; they are not in position to invoke additional limitations or conditions on its use by respondents. Art. 3485, R. S., 1925, provides that the court "shall by an order entered upon the minutes, set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State." It says nothing about any order limiting the use to the lifetime of the widow and minor children nor does it require them to give any bond insuring that the property will ultimately be returned to the estate. So the trial court correctly refused to impose any such conditions on respondents, because to do so would be to prejudice their rights, contrary to the agreement.

■ Our holding is in accord with our public policy as declared in Arts. 3486 and 3487, R. S., 1925, that the court shall make an allowance of cash, not to exceed $500, to the widow and children to compensate them for any specific exempt articles not among the effects of the deceased; and no conditions whatever are fixed against their right to this payment. It applies the principle stated in Carson et al. v. McFarland et al. (Civ. App.),

206 S. W. 2d, 130 (er. ref.): "Our exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant."

What we have said disposes of petitioners' 7th point, which is that it was error to pay respondents $4887 in lieu of the exempt articles sold because the statute limits such payment to $500. The point is overruled.

Four points assert that the Court of Civil Appeals erred in holding that 2 diamond rings, a pickup, 2 trailer chassis and a combine were exempt property as defined by Art. 3822, R. S., 1925.

■ It was held in First National Bank of Eagle Lake v. Robinson (Civ. App.), 124 S. W., 177, that a diamond ring "if worn by the owner" is wearing apparel and exempt under the statute. That holding was cited with approval in Patterson et ux. v. English et al. (Civ. App.), 142 S. W. 18, and in Cities Service Oil Co. v. North River Ins. Co. et al. (Civ. App.), 82 S. W. 2d., 184 (reversed in 130 Texas 186, 107 S. W. 2d., 994, because the statute allowing the wearing apparel exemption to the *head of the family* was not enacted until 1935). It was also approved in In Re Richards, 64 Fed. Supp., 923. And petitioners do not seem to question it; rather they argue it has no application here because the deceased did not wear the rings continuously but "at times" pledged them as security for loans and "at other times" had them in a file at home or in his bank box. Also, they contend that although respondents might successfully claim an exemption in one ring they cannot have it in two. If those contentions be sound the head of a family can claim only one shirt exempt as wearing apparel, and it is exempt while on his back but not while reposing in a dresser drawer; or if he pawns it to one creditor it becomes subject to levy by another. It is interesting to note that in In Re Richards, supra, the ring in question was mortgaged. We hold that the rings were exempt property.

■ Respondents claim the pickup as an exemption under subdivision 10, of Art. 3832, supra, that is, as a carriage. Under our policy of liberality in construing that article it has been determined that an automobile is a carriage. Willis et ux. v. Schoelman et al. (Civ. App.), 206 S. W. 2d., 283, and authori-

ties there cited. Mrs. Hickman testified that the pickup was used in getting from one place to another, and in traveling to and from town; and that supports the trial court's conclusion that it served the purpose of a carriage. A pickup is certainly no more different from an automobile than an automobile is from a carriage, so it was properly classified by the trial court as an exemption.

Petitioners, in this connection, cite Mrs. Hickman's testimony that she and her deceased husband had an automobile on the farm, but what petitioners overlook is that she further said that it had been sold by her husband "about a year ago."

We think the combine was correctly adjudged exempt as an implement of husbandry, under subdiv. 4, of the statute. Mrs. Hickman swore that it was used as a thrasher to take the place of an old binder which the deceased had quit using "in the last year or two" and which the administrators had sold for $30. That use made it an implement of husbandry.

This is true, also, of the two trailer chassis. Mrs. Hickman testified that her husband had bought them just before "he took his bed", that "right at that time he had the hard luck, and at that time they had not been used", but that they were to be used to carry cotton to the gin and for "any use you would make of a four wheel trailer on a farm or ranch." This testimony as to the purpose of the deceased in buying the chassis is in no manner challenged, and we see no good reason why the fact that Mr. Hickman's death intervened before that purpose could be executed should change the status of the articles under our exemption statutes.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 22, 1950.

Rehearing overruled December 20, 1950.