**In the Matter of Francisco A. FERNANDEZ and Maura M. Fernandez, Debtors.**

**Francisco A. FERNANDEZ and Maura M. Fernandez, Appellants,**

v.

**Martin W. SEIDLER, Trustee, Appellee.**

No. 88–5551
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1988.

Yocel Alonso, John C. Landon, Bellaire, Tex., for appellants.

Martin Warren Seidler, Shelley D. Flume, San Antonio, Tex., for appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellants Francisco and Maura Fernandez voluntarily filed a joint Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas. Pursuant to 11 U.S.C. § 522(b), Mr.

---

and Mrs. Fernandez elected to claim exemptions as provided by Texas state law. Appellants listed over $8,000 worth of jewelry as exempt property.[1] Texas Property Code § 42.002(3)(C) allows debtors to exempt "clothing," but includes no separate category for "jewelry."[2] The bankruptcy court came to the plausible conclusion that "clothing" does not include jewelry and denied appellants' claimed exemptions as a matter of law. The district court affirmed. 89 B.R. 601 (W.D.Tex.1988). Applying Texas law governing the construction of exemption statutes, we now reverse.

## I

■ Prior to recodification in 1983, Texas law allowed a family to exempt "wearing apparel."[3] Cases interpreting the exemption statute held that the phrase "wearing apparel" included at least some items of jewelry.[4] For instance, in *Hickman v. Hickman*,[5] the Texas Supreme Court ruled that two diamond rings occasionally worn by the owner should be considered "wearing apparel," even though the owner did not wear them continuously and even, at times, pledged the rings as collateral for loans or kept them in a bank box. The court noted the traditional Texas rule that

1. The debtors claimed as exempt property a man's watch, two ladies' watches, cuff links, two wedding rings, two other rings, three necklaces, six earrings and a pendant (amethyst and diamonds), and three bracelets. The estimated value of these items totalled $8,005.

2. The federal exemptions include "wearing apparel" and "jewelry" in separate categories. *See* 11 U.S.C. § 522(d)(3), (4).

3. Tex.Rev.Civ.Stat.Ann. art. 3832(17) (Vernon 1966) (repealed) contained the "all wearing apparel" language. Article 3832 was repealed by 1973 Tex.Gen.Laws Ch. 588, § 4, at 1629, which moved the "wearing apparel" language to article 3836.

4. *See, e.g., In re Richards*, 64 F.Supp. 923, 927 (S.D.Tex.1946); *First National Bank of Eagle Lake v. Robinson*, 124 S.W. 177, 179 (Tex.Civ. App.—San Antonio 1909, no writ).

5. 149 Tex. 439, 234 S.W.2d 410, 413–14 (1950).

our exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant.[6]

This liberal rule of construction has led Texas courts to conclude that

a dray is a "wagon" ... an automobile is a "carriage" ... a piano is "household and kitchen furniture" ... [and] the word "horse" includes a bridle and saddle, as well as the shoes on its feet and the rope and martingales around its neck.... And this spirit of liberal construction has been indulged until [the courts] have held that an unbroken colt is a "horse" ... and even that a mule, removed as he is one degree by consanguinity, is nevertheless a "horse." Furthermore, in their effort to extend the humane and beneficial character of [their] exemption statute, [Texas courts] have become so blind to every other consideration that they have looked upon the mule's father and pronounced him— voice, ears, and all—a horse.[7]

As part of its ongoing project of statutory recodification, the Texas Legislature in 1983 adopted Senate Bill No. 748, creating the Texas Property Code.[8] The bill

6. *Id.* 234 S.W.2d at 413 (quoting *Carson v. McFarland*, 206 S.W.2d 130, 132 (Tex.Civ.App.— San Antonio 1947, writ ref'd)).

7. *Patterson v. English*, 142 S.W. 18, 19 (Tex.Civ. App.—Amarillo 1911, no writ) (citations omitted; holding that "the spirit of a law which can convert a jackass into a horse" would protect three heifers which had never given milk, each with an unborn calf, under the category of "five milch cows and their calves").

8. The project of recodification is authorized by Tex. Gov't Code Ann. § 323.007 (Vernon 1988), itself a recodification of Tex.Rev.Civ.Stat.Ann. art. 5429b–1 (repealed). The Texas Legislative Council has been authorized to "plan and execute a permanent statutory revision program for the systematic and continuous study of the statutes of this state and for the formal revision of the statutes on a topical or code basis." Tex. Gov't Code Ann. § 323.007(a) (Vernon 1988). "The purpose of the program is to clarify and simplify the statutes and to make the statutes more accessible, understandable, and usable." *Id.*

repealed the exemptions contained in old article 3836 and recodified them at Tex. Prop.Code Ann. § 42.002 (Vernon 1984). In the process, the code revisors changed the phrase "wearing apparel," substituting in its place the less stilted term "clothing." The courts below decided that the Texas Legislature had made a substantive change in state law.[9] Since the cases construing jewelry to be wearing apparel turned on the fact that jewelry is "worn," they reasoned, the decision to remove the word "wearing" from the statute dictated a contrary result.[10] Because "clothing" does not normally include jewelry, the lower courts disallowed the exemptions claimed by the debtors.

The lower court opinions err by giving an effect to the adoption of the Texas Property Code that the Texas Legislature did not intend. We begin our analysis with provisions of the Texas Code Construction Act relating to the construction of statutes:[11]

In construing a statute, *whether or not the statute is considered ambiguous on its face,* a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provison.[12]

In the case of the Texas Property Code, the circumstances of enactment and legislative history make clear that the Texas Legislature did not intend to change the legal effect of the prior statute. In authorizing

**9.** For instance, the district court wrote:

This change in terminology from "all wearing apparel" to "clothing" cannot be misconstrued as a modernization of the phrase "all wearing apparel" since this expression is not archaic or infrequently used. This alteration by the Texas Legislature has excluded the possibility of jewelry as exempt personal property. Furthermore, the Texas Legislature has chosen not to include a separate exemption for jewelry as. does 11 U.S.C. Section 522(d)(4), under the Federal exemptions.

**10.** For instance, the bankruptcy court concluded:

The statute itself might not have been overwritten by the change in wording, but the judicial gloss in cases like *Hickman* and *Robinson* apparently has been. The holdings of these old Texas cases were adornments which hung on the word "wearing." That word is now gone from the statute and with it, the justification for the gloss which once made jewelry exempt.

**11.** The Property Code specifically directs courts to the Code Construction Act. Tex.Prop.Code Ann. § 1.002 (Vernon Supp. 1988).

**12.** Tex.Gov't Code Ann. § 311.023 (Vernon 1988) (emphasis supplied). The Trustee points our attention to *Carbide Int'l, Ltd. v. State,* 695 S.W. 2d 653, 656 n. 3 (Tex.Civ.App.—Austin 1985, no writ), wherein the court stated:

When adopted by the Legislature in a constitutional manner, the resulting Code as a whole constitutes a law in and of itself, and not a mere compilation of previous statutes, save in certain respects not material here. The Code becomes the statutory law of the State respecting the subjects to which it relates, superseding previous statutes omitted therefrom or repealed thereby, so that anyone subject to its provisions may look to the Code alone with safety and confidence, and without resorting to the previous statutes except to explain contradictions and ambiguities.

However, we agree with another Texas appellate court which wrote more recently:

We are aware of the cases holding that the enactment of a revision or a codification of a statute prevents the court from looking to the prior repealed statute unless an ambiguity or contradiction exists on the face of the statute. This is simply a restatement of the general rule that the intent of a statute may not be inquired into if the statute is clear on its face. We believe that this general proposition cannot be followed when a statute is codified and the legislature explicitly states that no substantive change in the law is intended. Enacting a codified statute, therefore, even if the statute is clear on its face, is not controlling if it results in a substantive change in the law contrary to the direction of the code's preamble.

*Bryant v. Metropolitan Transit Authority,* 722 S.W.2d 738, 740 (Tex.Civ.App.—Houston [14th Dist.] 1986, no writ) (citations omitted). Further, the Legislature in the Code Construction Act specifically allows us to look to former statutory provisions in construing a statute, whether or not the statute is ambiguous. Tex. Gov't Code Ann. § 311.023(4) (Vernon 1988).

recodification, the Legislature narrowly defined the task, providing, "When revising a statute the [Texas Legislative] Council *may not alter the sense, meaning, or effect* of the statute."[13] The revisors of the Property Code took this prohibition to heart:

> In reviewing the proposed code, the reader should keep in mind the following:
>
> .    .    .    .    .
>
> (3) *This is a nonsubstantive revision.* The staff's authority does not include improving the substance of law. The sole purpose of this draft is to compile all the relevant law, arrange it in a logical fashion, and rewrite it *without altering its meaning or legal effect.* If a particular source statute is ambiguous and the ambiguity cannot be resolved without a potential substantive effect, the ambiguity is preserved.[14]

The Property Code as adopted specifically states that it constitutes "part of the state's continuing statutory revision program," which "contemplates a topic-by-topic revision of the state's general and permanent statute law *without substantive change.*"[15] Section seven of Senate Bill No. 748, which contained the new code, declares, "This Act is intended as a recodification only, and no substantive change in the law is intended."[16] The bill's sponsor, Senator McFarland, and the chief revisor, Mr. Kindred, repeatedly assured the legislators that the proposed code made no substantive changes in prior statutes.[17]

Repeatedly and clearly, the Texas Legislature stated its intention that adoption of the Property Code have no effect on the legal results reached under the statutes recodified. Even though the exemption statute as amended is not ambiguous, the Code Construction Act allows us to take these statements into account in construing the statute. However, our holding does not rest on the legislative history alone. The Code Construction Act also allows us to consider the "consequences of a particular construction." In practical terms, the lower court rulings allow a bankruptcy trustee to "remove the pendants from a lady's ears, or a badge from the veteran's coat."[18] We find it difficult to believe that Texas law requires debtors to hand over their wedding rings to satisfy the claims of creditors,[19] while letting them keep "home furnishings, including family heirlooms," and "athletic and sporting equipment."[20] The lower court construction of the statute does not mesh well with the Texas tradition of liberality toward the debtor in construing exemption statutes.[21]

## II

The Bankruptcy Trustee urges that the exemption statutes should be construed to give debtors a fresh start, not a head start. The Fernandezes' claim of over $8,000 worth of exempt jewelry may well be excessive. Our holding should not be read as allowing automatic exemption of all jewelry claimed by the debtor.

---

**13.** Tex.Gov't Code Ann. § 323.007(b) (Vernon 1988) (emphasis supplied).

**14.** Kelly, *Foreward to Proposed Code, reprinted in* Tex.Prop.Code Ann., at VIII (Vernon 1984) (emphasis supplied).

**15.** Tex.Prop.Code Ann. § 1.001(a) (Vernon 1984) (emphasis supplied).

**16.** 1983 Tex.Gen.Laws Ch. 576, § 7, at 3475, 3730.

**17.** Hearings Before Senate Committee on Finance on Tex.S.B. 748, 68th Leg. (April 26, 1983) (tape available from Senate Staff Services Office); Floor Debate in the Senate on Tex.S.B. 748, 68th Leg. (May 2, 1983) (tape available from Senate Staff Services Office).

**18.** *First Nat'l Bank of Eagle Lake v. Robinson,* 124 S.W. at 179.

**19.** The Bankruptcy Court recognized the harshness of such a rule:

> The result reached in this decision is undoubtedly harsh, to be sure. No one could relish the thought of a trustee in bankruptcy confiscating wedding rings and watches at the first meeting of creditors. Federal courts must resist the temptation to amend arguably unsatisfactory state legislation.

**20.** Tex.Prop.Code Ann. § 42.002(1), (3)(E) (Vernon 1984).

**21.** *Hickman v. Hickman,* 234 S.W.2d at 413; *Patterson v. English,* 142 S.W. at 19.

In particular, two requirements limit a debtor's ability to exempt jewelry from the Trustee's reach. First, the item of jewelry must be "worn by the owner." [22] Since we hold today that the Texas Legislature intended no change in the law when it substituted "clothing" for "wearing apparel" in the exemption statute, it follows that the limitations imposed by the older cases still apply under the new statutory language. Thus, it would be inappropriate to claim an exemption for jewelry held by the debtor for investment or resale purposes.

Second, the statute requires that items claimed under the "clothing" category of the exemption statute be "reasonably necessary for the family or single adult." [23] The "reasonably necessary" language was added to the statute in 1973 and has been construed by at least one court in the context of a claimed exemption of jewelry. [24]

## III

We hold today that Tex.Prop.Code Ann. § 42.002(3)(C) (Vernon 1984) allows a debtor to claim an exemption for jewelry worn by the owner and reasonably necessary for the family or single adult. Since the bankruptcy court failed to apply these standards to the exemptions claimed by Mr. and Mrs. Fernandez, we remand the case for reconsideration in light of our opinion.

REVERSED AND REMANDED.

---

**22.** See Hickman v. Hickman, 234 S.W.2d at 413–14.

**23.** See Tex.Prop.Code Ann. § 42.002(3) (Vernon 1984).

**24.** In re Tyler, 2 Bankr.Ct.Dec. (CRR) 1537, 1538 (N.D.Tex.1976):

Factors which are important in determining whether the claimed exemption is reasonably necessary are the station in life of the person claiming the exemption; the feasibility of wearing it in day to day activity; its value; and the circumstances under which it was acquired including the financial condition of the debtor at that time. There are others, the list does not purport to be exhaustive.

We do not necessarily cite these factors with approval, but merely use them to illustrate the types of questions a court might address in deciding whether jewelry claimed by a debtor meets the reasonable necessity test.