**In re Richard E. MEYER, Debtor.**

**Bankruptcy No. 96–16838–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 8, 1997.

---

Joel Steinberg, Joel Steinberg & Associates, Fairfax, VA, for debtor.

Gordon P. Peyton, Alexandria, VA, Chapter 7 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on (a) the chapter 7 trustee's objection to the debtor's exemptions, (b) the order to show cause against the debtor for his failure to cooperate with the trustee, and (c) the debtor's motion to dismiss the show cause order. A hearing was held on June 3, 1997, at which evidence was presented and argument was heard. At the conclusion of the hearing, the court reserved ruling and allowed counsel for the debtor to submit a post-hearing memorandum, and gave the trustee an opportunity to respond. The parties have done so, and the matter is now ripe for determination. For the reasons stated herein, the court concludes that $1,432 in Navy retirement pay that had been garnished from the debtor's bank account may not be exempted by the debtor and that a men's watch and cuff links constitute "wearing apparel" that may be exempted under Va.Code Ann. § 34–26(4).

### Facts

The debtor, Richard E. Meyer, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on December 6, 1996. The meeting of creditors was held on January 16, 1997. By order entered March 14, 1997, the debtor was granted a discharge of his dischargeable debts. After learning that the debtor had not filed a timely homestead deed to perfect the homestead exemption claimed on his bankruptcy schedules, the trustee filed a timely objection on May 1, 1997 to those of the debtor's exemptions that had been claimed under Va. Code Ann. §§ 34–4 and 34–13. In particular, the trustee objected to the exemption of several bank accounts, men's jewelry, and certain funds held under garnishment.

In the debtor's original Schedule C ("Property Claimed Exempt"), he claimed an exemption under Va.Code Ann. § 34–13 in three checking accounts: one with George Mason Bank in the amount of $1.00; a second with First National Bank of Maryland in the amount of $5.00; and a third with Navy American Federal Credit Union [*sic*] in the amount of $25.00. The debtor also claimed an exemption under Va.Code Ann. § 34–13 in the following items and amounts: "Misc. men's jewelry" in the amount of $950; "100% Stockholder American Real Estate Brokerage" in the amount of $1; "Richard Meyer Retirement Trust" in the amount of $1; and "Potential proceeds from garnished bank account" in the amount of $1,432.

Because the debtor did not file a timely homestead deed, the trustee by letter dated February 26, 1997, requested that the debtor provide information on the bank accounts, and also demanded payment of the garnishment proceeds and the value of the jewelry, asserting that those assets could not be exempted under the debtor's homestead exemption. On April 14, 1997, debtor's counsel requested that the trustee not object to the claimed exemptions due to the small amount of money involved, while also asking that the trustee inform the debtor within five days if the trustee was going to object to the exemptions. On May 1, 1997, as noted above, the trustee filed an objection to the debtor's claimed exemptions, along with an application for an order to show cause against the debtor for failure to cooperate with, and to turn funds over, to the trustee. On May 7, 1997, this court entered the order to show cause against the debtor, making it returnable to the hearing date on June 3, 1997. On May 19, 1997, the debtor filed a motion to

dismiss the order to show cause, claiming that the information requested by the trustee had been provided; that the funds demanded by the trustee could be exempted under other exemption statutes; and that the debtor would be filing amended schedules doing so.

On June 2, 1997—just one day before the hearing—the debtor filed amended schedules B ("Personal Property") and C ("Property Claimed Exempt").[1] The debtor now specifies that the "men's jewelry" listed in the original schedules as being worth $950 consists of a men's watch and cuff links that he now values at $400 and that he now asserts is exempt under Va.Code Ann. § 34–26(4) as "wearing apparel." At the hearing, the debtor testified that his original valuation of the men's jewelry was only "ballpark" and that the $400 valuation on the amended schedules reflects a better estimate due to "more investigation." The trustee did not contest the debtor's valuation of this property. Property still not listed in the schedules, but which the debtor testified at the hearing that he owned, includes an aviator ring. In the amended schedules, the debtor still claims exempt under Va.Code Ann. § 34–13 the value of the three checking accounts, the 100% shareholder interest in American Real Estate Brokerage, and the Richard Meyer Retirement Trust.

With respect to $1,432 in funds garnished from his checking account, the debtor now asserts that those funds are exempt under

Va.Code Ann. § 34–34 as being derived from military retired pay. The debtor testified that the funds garnished consisted solely of his Navy retired pay, which is his sole source of income. The debtor's schedule I ("Current Income") corroborates this. The debtor testified that he has his retired pay deposited directly in a Navy Federal Credit Union savings account and that he subsequently transfers funds as needed to a checking account with George Mason Bank in order to write checks to pay his bills and living expenses.[2] Neither account contains any designation reflecting that it is a special account or, indeed, anything other than a general savings or checking account, as the case may be. The debtor testified without contradiction that no funds are deposited into either account except for his military retired pay. No evidence was presented that the debtor notified either bank that the accounts were intended solely for the deposit of his Navy retirement income. Finally, the debtor testified that once his retired pay is deposited in the Navy Federal Credit Union account and subsequently transferred to the George Mason Bank checking account, he writes checks on the funds within "a couple days or a week" and spends all of the funds from his retired pay every month.

### Conclusions of Law and Discussion

#### I.

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a)

---

1. Because the amended schedules were filed so close in time to the hearing on the trustee's objection to the debtor's exemptions, the trustee did not have the opportunity to file an amended objection. However, the trustee did raise several arguments objecting to the debtor's amended claim of exemptions both orally at the hearing and in a supplemental response filed on June 18, 1997, after the hearing was concluded. The debtor, in his post-hearing memorandum, asked the court to deny the trustee's "mythical" objection. Under well-settled principles, a debtor is liberally permitted to amend his or her claim of exemptions in order to take advantage of available exemptions. See *Tignor v. Parkinson*, 729 F.2d 977 (4th Cir.1984); *Shirkey v. Leake*, 715 F.2d 859, 862–64 (4th Cir.1983) ("The [Bankruptcy Code] freely allows the bankrupt to amend his schedule of exemptions"); *In re Sherman*, 191 B.R. 654, 656 (Bankr.E.D.Va.1995). This is precisely what the debtor is seeking to do. The debtor is arguing, in substance, that while he

should have the unfettered right to amend his claim of exemptions, the trustee should be penalized for not formally objecting to a claimed exemption which the trustee learned about no earlier than 24 hours before the scheduled hearing. The court notes that under Fed.R.Bankr.P 4003(b), the filing of amended schedules triggers a new 30 day period in which the trustee may object to the debtor's claim of exemptions. Since the trustee timely objected to the debtor's original claim of exemption, and since the items claimed exempt remain the same, the court, in order to promote judicial economy, will treat the trustee's original objection as also extending to the amended claim of exemptions.

2. He testified that the reason he used George Mason Bank for this purpose is because Navy Federal Credit Union does not return paid checks, and he prefers to have the canceled checks for his records.

and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal under 28 U.S.C. § 158.

## II.

Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property, "wherever located and by whomever held." Under § 522(b), Bankruptcy Code, an individual debtor may "exempt from property of the estate" either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. A state, however, may "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34–3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general (nonbankruptcy) Federal law. *In re Smith*, 45 B.R. 100 (Bankr.E.D.Va.1984).

■ The state law exemptions available to Virginia residents are primarily set forth in Title 34 of the Code of Virginia. The most important of these are the "homestead" exemption in Va.Code Ann. § 34–4 and the "poor debtor's" exemption in Va.Code Ann. § 34–26. Under the homestead exemption, a "householder"—defined as any resident of Virginia—may hold up to $5,000 of real or personal property exempt by filing for record an instrument known as a homestead deed in the Circuit Court of the city or county where the real property is located or, if personal property is claimed, where the debtor resides. Va.Code Ann. §§ 34–4, 34–6, 34–13, and 34–14. Additional amounts may be claimed exempt if the householder supports dependents or is a disabled veteran. Va. Code Ann. §§ 34–4 and 34–4.1. In the case of a debtor who has filed for bankruptcy, the homestead deed must be filed within 5 days of the first date set for the meeting of creditors in the bankruptcy case. Va.Code Ann. § 34–17. Failure to properly file the homestead deed results in the loss of the exemption in bankruptcy. *Zimmerman v. Morgan*, 689 F.2d 471 (4th Cir.1982).

■ The "poor debtor" exemption in Va. Code Ann. § 34–26 is in addition to, and independent of, the homestead exemption. Under the poor debtor exemption, a householder may hold exempt from creditor process certain listed assets and categories of assets. Some of these categories have dollar limits and some do not. No specific act, such as the recording of a homestead deed, is required to perfect the poor debtor's exemption. *Id.*[3]

■ Here, it is uncontested that the debtor failed to file a homestead deed. Therefore, unless the property originally claimed exempt under the homestead exemption may be independently claimed exempt under some other applicable provision, it must be turned over to the trustee for administration. *Zimmerman v. Morgan, supra.* Accordingly, to the extent the trustee desires to administer the three checking accounts, the debtor's shareholder interest in American Real Estate Brokerage, and the Richard Meyer Retirement Trust, the debtor will be required to turn those assets over to the trustee, since they have been claimed exempt only under the homestead exemption, and no other basis appears upon which they may be exempted.

## III.

The court now turns to whether the debtor may exempt the $1,432 garnished from the debtor's checking account at George Mason

---

**3.** Va.Code Ann. § 34–26 states in relevant part: "It shall not be required that a householder designate any property exempt under this section in a deed in order to secure such exemption." Additionally, Va.Code Ann. § 34–14, which sets forth the requirement for the recording of a homestead deed in order to claim a homestead exemption in personal property, states, "Such writing or deed shall not be required to secure any exemption under this Code except those exemptions created by §§ 34–4, 34–4.1 and 34–13."

Bank and which derives from his Navy retired pay. The court views this issue as a two step process: whether debtor's retired pay is exempt under some provision of state or general (nonbankruptcy) Federal law, and if so, whether the funds lost their exempt status when they were deposited in the Navy Federal Credit Union account and subsequently transferred to the George Mason Bank checking account. The court addresses each issue in turn.

### A.

■ As a preliminary matter, the court notes that the debtor in his amended schedules claims the garnished funds exempt under Va.Code Ann. § 34–34. Section § 34–34 permits a debtor to claim a specific exemption for interests in a "retirement plan." The term "retirement plan" is defined as a plan, account, or arrangement that "is intended" to satisfy certain specified provisions of the Internal Revenue Code, including those that govern individual retirement accounts (IRA's) and 401K plans. It was enacted to place individuals with qualified self-funded retirement plans on a level playing field with persons whose retirement income derived from pensions with anti-alienation provisions enforceable under ERISA and was therefore immune from creditor process.[4] In the present case, however, § 34–34 is simply inapplicable. Navy retired pay is compensation payable under 10 U.S.C. § 1401 *et seq.* and does not fall within the definition of "retirement plan" in § 34–34 because it is not a "plan, account, or arrangement" that is "intended" to satisfy the requirements of Internal Revenue Code §§ 401, 403(a), 403(b), 408, former 409, or 457. Accordingly, Va. Code Ann. § 34–34 provides no basis for exempting the funds.

**4.** ERISA is the common abbreviation for the Employee Retirement Income Security Act of 1974, codified at 29 U.S.C. § 1001 *et seq.* To qualify under ERISA, a retirement plan is required to include a restriction prohibiting assignment and alienation of pension benefits. In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that the anti-alienation provisions of an ERISA-qualified plan constituted an enforceable restriction on alienation under § 541(c)(2), Bankruptcy Code. The result is that a debtor's interest in an ERISA-qualified plan is not property of the bank-

### B.

■ In his post-hearing memorandum, the debtor also asserts that Navy retired pay is, by its very nature, simply immune from creditor process. Although the debtor has pointed to no statute expressly declaring that such pay is exempt, as a practical matter sovereign immunity prevents the United States from being made a defendant in a garnishment proceeding[5] and thereby effectively protects such pay, at least prior to the time it is paid. For certain types of Federal pay, that historical protection was removed by the Hatch Act Reform Amendments of 1993,[6] which as a general proposition made the salaries of federal employees subject to the same state laws on garnishment and attachment as employees in the private sector. The statute provides in relevant part that "[s]ubject to the provisions of this section and the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) pay from an agency to an employee is subject to legal process in the same manner and to the same extent as if the agency were a private person." 5 U.S.C. § 5520a(b). An "agency" is defined as "each agency of the Federal Government, including—an executive agency[.]" *Id.* at § 5520a(a)(1)(A). An "employee" is defined as an "employee of an agency[.]" *Id.* at § 5520a(a)(2). Given this broad definition, the court concludes that an officer or an enlisted person of the armed services qualifies as an "employee" whose pay is potentially subject to garnishment.

■ However, it is also necessary to determine whether military *retired* pay constitutes "pay" as that term is used in the statute. The statute itself defines "pay" as follows:

ruptcy estate. *In re Hanes*, 162 B.R. 733 (Bankr. E.D.Va.1994) (Bostetter, C.J.).

**5.** *McCarty v. McCarty*, 453 U.S. 210, 228, 101 S.Ct. 2728, 2739, 69 L.Ed.2d 589 (1981) (noting that "under *Buchanan v. Alexander*, 4 How. 20, 11 L.Ed. 857 (1845), and *Applegate v. Applegate*, 39 F.Supp. 887 (E.D.Va.1941), military pay could not be attached so long as it was in the Government's hands.")

**6.** Pub.L. 103–94, 107 Stat. 1001 (Oct. 6, 1993).

(A) basic pay, premium pay paid under subchapter V, any payment received under subchapter VI, VII, or VIII, severance and back pay paid under subchapter IX, sick pay, incentive pay, and any other compensation paid or payable for personal services, whether such compensation is denominated as wages, salary, commission, bonus pay or otherwise; and

(B) does not include awards for making suggestions.

*Id.* at § 5520a(a)(4). Noticeably absent from the definition of "pay" is any language that would include "retired pay" or a "pension."

The statute directs that the Secretaries of the Executive Departments "shall promulgate regulations to carry out the purposes of this section with regard to members of the uniformed services." 5 U.S.C. § 5520a(k)(1). These regulations can be found at 32 C.F.R. parts 112 and 113. Most relevant to the present controversy is 32 C.F.R. § 113.3, which states:

(c) *Pay subject to involuntary allotment.* For purposes of complying with 32 CFR part 112 and 5 U.S.C. 5520a(k), pay subject to involuntary allotment shall be determined by:

(1) Including:

(i) Basic pay but excluding reduction for education for education benefits under section 38 U.S.C. 1411 ("New G.I. Bill").

(ii) Special pay (including enlistment and reenlistment bonuses).

(iii) Incentive pay.

(iv) Accrued leave payments (basic pay portion only).

(v) Readjustment pay.

(vi) Severance pay (including disability severance pay).

(vii) Lump-sum Reserve bonus:

(viii) Inactive duty training pay.

(2) *Excluding:*

(i) *Retired pay* (including disability retired pay).

(Emphasis added). Thus, under the applicable regulations, "retired pay" is simply excluded from pay that is subject to involuntary allotment. Accordingly, the court holds that the debtor's retired pay is not subject to legal process.[7]

### C.

The next issue is whether the $1,432 lost its exempt status when it was paid to the debtor and subsequently deposited in his checking account. The controlling case in Virginia is *Bernardini v. Central Nat'l Bk. of Richmond,* 223 Va. 519, 290 S.E.2d 863 (1982). In *Bernardini,* the debtors deposited funds arising both from disability payments and from wages into their bank account and claimed that those funds were exempt under applicable law. *Id.* at 520–21, 290 S.E.2d at 864. The bank, however, sought to set off the funds in the account against amounts the debtors owed the bank, claiming that any funds in the account lost their exempt status upon being put into the account. *Id.* at 521,

---

**7.** The debtor makes several other arguments in support of the proposition that military retired pay is immune from creditor process. Since the court has determined that the applicable statute and regulations do not permit such pay to be garnished, it is not necessary to discuss the debtor's alternate theories in detail. The debtor first asserts that under this court's holding in *Dorfman v. Moorhous (In re Moorhous),* 180 B.R. 138 (Bankr.E.D.Va.1995), *aff'd* 108 F.3d 51 (4th Cir. 1997), military retired pay is not "property of the estate." However, *Moorhous* dealt with retired pay becoming due *post-petition,* not with pay earned and paid *pre-petition,* and the holding in that case—that an attempted assignment of military retired pay was legally ineffective—did not turn on whether such pay was property of the estate. The debtor's second argument is that his retired pay constitutes an "annuity" that is immune from creditor process under 10

U.S.C. § 1440. The cited statute, however, by its express terms applies only to the "annuity" provided for in subchapter I, chapter 73, title 10, United States Code. That subchapter, entitled "Retired Servicemen's Family Protection Plan," allows a retired member of the armed forces to elect reduced retired pay in order to fund an annuity in favor of his or her surviving spouse or children. 10 U.S.C. § 1431 *et seq.* Such annuity becomes payable only when the member dies. Nowhere in title 10 is a member's own retired pay described or referred to as an "annuity," and it is clear that 10 U.S.C. § 1440 is not directed at retired pay but at the survivor annuity that becomes payable after the electing service member's death. Accordingly, the debtor's reliance on 10 U.S.C. § 1440 as not permitting attachment or garnishment of his retired pay is misplaced.

290 S.E.2d at 864. The Virginia Supreme Court held that when funds are deposited in a general bank account, and commingled with nonexempt funds, a person loses whatever exemptions he or she would otherwise have been able to claim with respect to the funds in the account. *Id.* at 522, 290 S.E.2d at 865. The court reasoned:

> The general rule is that "'the relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes debtor of the depositor....'" ... However, *when funds are deposited for a special purpose with notice to the bank, the deposit does not become the property of the bank* and the right of set-off does not exist.

*Id.* at 521, 290 S.E.2d at 864 (emphasis added) (first omission in original) (original source omitted). The court also held that exempt funds that are commingled with nonexempt funds lose their exempt status.[8] *Id.* at 522, 290 S.E.2d at 865. Critical to the court's decision was a balancing between the tremendous burden that would be put on bank if it had to inquire into each deposit compared with the relatively simple procedure a customer could follow—by depositing the funds into a separate account, with proper notice to the bank, and keeping the funds segregated—to ensure that the funds remain exempt. *Id.*

That portion of *Bernardini* holding that funds in a bank account lost their special status when commingled with a debtor's general funds has been followed by the Fourth Circuit. *Alexander & Jones v. Sovran Bank, N.A. (In re Nat Warren Contracting Co.),* 905 F.2d 716, 718–19 (4th Cir.1990). *But see NCNB Financial Servs., Inc. v. Shumate,* 829 F.Supp. 178, 180–81 (W.D.Va.1993), *aff'd sub nom. Nationsbank of North Carolina, N.A. v. Shumate,* 45 F.3d 427 (4th Cir.1994), *cert. den.* 515 U.S. 1161, 115 S.Ct. 2616, 132 L.Ed.2d 859 (1995) (holding that under 42 U.S.C. § 407(a), social security benefits commingled with other nonexempt funds in a bank account remain exempt if the funds are "reasonably traceable to social security income" on a first-in, first-out basis); *In re Woolard,* 23 Collier Bankr.Cas. 59 (Bankr. E.D.Va., 1980) (Bostetter, J.) (holding without elaboration that funds in debtor's bank account arising from worker's compensation payments remained exempt).

The continued vitality of that portion of *Bernardini* holding that an exemption is lost if otherwise-exempt wages are deposited into a non-designated account, even in the absence of commingling, is questionable in light of subsequent amendments to Va.Code Ann. § 34–29, which deals with wage garnishments. In general, § 34–29 limits wage garnishments, except those for enforcement of support or tax obligations, to 25% of disposable income, thereby in effect creating an exemption as to the remaining 75%. *In re Wilkinson,* 196 B.R. 311 (Bankr.E.D.Va. 1996). In 1992, approximately 10 years after *Bernardini,* the General Assembly amended § 34–29 to define "earnings" as follows:

> (d)(1) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, *whether paid directly to the individual or deposited with another entity or person on behalf of and traceable to the individual,* and includes periodic payments pursuant to a pension or retirement program; *provided, that in no event shall funds that have been deposited by or for an individual for more than thirty days be considered earnings.*

> \* \* \* \* \* \*

> (g) *A depository wherein earnings have been deposited on behalf of and traceable to an individual shall not be required to determine the portion of such earnings which are subject to garnishment.*

---

8. By statute, this rule has been modified with respect to unemployment compensation and workers compensation benefits, which are expressly protected against garnishment "even if the compensation ... is deposited into an account with a financial institution ... and is thereby commingled with other funds." Va. Code Ann. §§ 60.2–600 (unemployment compensation) and 65.2–530 (workers compensation).

(added matter shown by italics).[9] The effect of the amendment was to preserve the exemption of "earnings"—which the statute defines as including "periodic payments pursuant to a pension or retirement program"[10]— even though the funds are deposited into a bank account. By not including any express requirement that such account be specially designated, the statute appears to silently overrule that portion of *Bernardini* requiring that the bank be given notice of the special character of the account, at least where "earnings" are at issue.[11] It is true that subsection (g) relieves the bank of any requirement "to determine the portion of such earnings which are subject to garnishment," but the apparent intent of this language is simply to protect the bank against liability if it honors a garnishment summons and to place the burden on the judgment debtor to file in the court out of which the garnishment summons issued an appropriate "claim of exemption from garnishment" under Va.Code Ann. § 8.01–512.5.[12] Accordingly, had the debtor's retired pay been garnished while it was still on deposit in Navy Federal Credit Union, this court would be reluctant, in the absence of any evidence of commingling, to conclude that the funds were not exempt at least to the extent of 75% as provided by Va.Code Ann. § 34–29.

■ However, once the funds were withdrawn by the debtor from Navy Federal Credit Union and deposited in a non-designated account in George Mason Bank, the statutory protection offered by Va.Code Ann. § 34–29(d)(1) no longer applies. The statutory language "whether *paid directly to* the individual or *deposited with* another entity ... on behalf of and traceable to the individual" (emphasis added) plainly seems to refer to direct deposits of pay by an employer, or possibly initial deposits by an employee who is "paid directly," but not to subsequent transfers by the employee to other financial institutions. For that reason, the court concludes, albeit somewhat reluctantly, that the debtor's retired pay lost its exempt status when it was withdrawn from Navy Federal Credit Union and transferred to a the debtor's checking account in George Mason Bank. Although the debtor testified that the only funds deposited in either account consisted of his military retired pay, there is no evidence that either account was designated as a special account or that the debtor had another account for general use. While Navy Federal Credit Union would likely—because of the special nature of direct deposits—be aware of the character of funds in the account, there is no apparent basis on which George Mason Bank could have known, absent special designation of the account, that it held only retired pay. Under *Bernardini*, the failure to notify the depository bank of the special character of the account is fatal to the claim of exemption. Without proof of such notice, the court simply cannot find that the $1,432 in the account when it was garnished remained exempt.[13]

### IV.

The court next considers whether the debtor may claim an exemption in his cuff links and men's watch under Va.Code Ann. § 34–

---

**9.** 1992 Va. Acts. ch. 674. The language, "provided, however that in no event shall funds that have been deposited by or for an individual for more than thirty days be considered earnings," was subsequently deleted by 1996 Va. Acts. ch. 330 and is no longer part of the statute.

**10.** *See In re Hanes,* 162 B.R. 733 (Bankr.E.D.Va. 1994) (Bostetter, C.J.), where 75 % of the debtor's interest in two non-ERISA pension plans was held exempt under this section.

**11.** As noted above, separate statutes now protect unemployment and workers compensation benefits in Virginia even if commingled with other funds in a bank account.

**12.** Va.Code Ann. § 8.01–512.5 provides in relevant part as follows: "A judgment debtor shall have the right to a hearing on his claim of exemption from garnishment no later than seven business days from the date that the claim is filed with the court."

**13.** The evidence before the court did not reflect who actually has the garnished funds—that is, whether they are still being held by the bank, whether they have been paid over to the clerk of court or the garnishment creditor, or whether they have been paid over to the debtor. In any event, whoever has the funds is under a legal duty to turn them over to the trustee. § 542(a), Bankruptcy Code.

26(4) as "wearing apparel." [14] The crux of the issue before the court is simple: does the term "wearing apparel," as used in the Virginia poor debtor's exemption statute, include items of jewelry worn on the person, or is it limited to clothing? The question appears to be one of first impression with regard to the Virginia exemption statute, although courts in other jurisdictions have decided cases under similar statutes.

Under Va.Code Ann. § 34–26(4), a debtor may exempt from creditor process "[a]ll wearing apparel of the householder not to exceed $1,000 in value." As the term "wearing apparel" is not defined by the statute, the court turns to the legislative history to attempt to derive the term's meaning. The legislative history contains the following explanation:

> In addition to the homestead exemption, every householder is entitled to exempt a number of household items such as the family Bible, clothing, beds and bedding, and certain tools of the trade. Commonly known as the poor debtor's exemption, this statute is designed to ensure that the minimum essentials for daily life are free from creditor claims. It may also prevent a creditor from levying on property which has little or no resale value....
>
> The fundamental purpose of property exemption statutes is to protect a debtor and his dependents from absolute poverty and, in doing so, protect the state from assuming the support of debtors and their families. These statutes also are meant to provide, in some measure, an opportunity for the rehabilitation of the debtor into a viable economic participant in society. In applying exemption statutes, the debtor retains enough property to sustain a minimum standard of living and, in theory, to continue to provide support for his family ...
>
> The joint subcommittee members unanimously agreed that Virginia's current poor debtor's statute is desperately in need of modernization.... Looking again to North Carolina, the joint subcommittee adopted a scheme of providing categories of exempt property with monetary limits applicable to each category. This scheme would safeguard against abuse by returning the poor debtor's statute to its original purpose. That purpose is to provide exemption of certain property which, in the estimation of the legislature, is necessary to sustain daily life.

REPORT OF THE JOINT SUBCOMMITTEE STUDYING VIRGINIA'S EXEMPTION STATUTES, House Doc. No. 77, at 2–3, 9–10 (1990). The legislative history, however, contains no discussion of what the drafters of the statute intended to be encompassed within the description of "wearing apparel." [15] The explanation that the statute was intended to preserve "the minimum essentials for daily life" or "enough property to sustain a minimum standard of living" unfortunately provides little in the way of a workable standard.

■ Because the statute contains no definition of "wearing apparel," the court must assume that the General Assembly meant the term to have its normal, everyday meaning.

14. As noted above, the debtor testified at the evidentiary hearing that included within the blanket description of "men's jewelry" in the original schedules was an aviator ring. Since the ring has not been listed as exempt on the amended Schedule C, the court need not consider whether, if the debtor were to amend his Schedule C to claim the ring as exempt, such exemption would be valid. One important distinction that might be made with respect to a ring is that the statute already provides a specific exemption for "[w]edding and engagement rings," with no limitation on value. Va.Code Ann. § 34–26(1a). It could be argued, therefore, that in expressly providing for the exemption of only two types of rings under the poor debtor's exemption, the General Assembly intended to limit the exemption of rings to the types specified and not to allow other types of rings to be exempted as "wearing apparel." It could be argued with just as much force, however, that the General Assembly created the special exemption for wedding and engagement rings so that they would not be subject to the $1,000 limitation applicable to wearing apparel. In any event, the issue is not one the court need decide on the present record.

15. Prior to the 1990 amendment, the statute exempted "[a]ll necessary wearing apparel of the debtor and his family," without limitation as to value. The only reported case construing the former statutory language was *In re Perry*, 6 B.R. 263 (Bankr.W.D.Va.1980), in which the court held that a mink coat with a stipulated value of $2,500 was exempt.

*See In re Webb,* 210 B.R. 266 (Bankr.E.D.Va. 1997) (referring to Black's Law Dictionary and Webster's to determine meaning of term used in exemption statute); *Bell v. Dorey Elec. Co.,* 248 Va. 378, 382, 448 S.E.2d 622, 624 (1994) (turning to Black's Law Dictionary and Webster's for the everyday meaning of terms of a statute). *See also Lumbermen's Mut. Casualty Co. v. Keller,* 249 Va. 458, 460–61, 456 S.E.2d 525, 526 (1995) (looking to Black's Law Dictionary and Webster's Dictionary for the everyday meaning of a term of an insurance policy). The term "wearing apparel" has been defined as follows: when "general[ly] used in statutes, [it] refers not merely to a person's outer clothing, but *covers all articles usually worn,* and includes underclothing. All articles of dress generally worn by persons in the calling and condition of life and in the locality of the person in question." BLACK'S LAW DICTIONARY 1594 (6th ed.1990) (citation omitted) (emphasis added). Webster's does not provide a definition of the term "wearing apparel," as such, but it does define its component parts. "Wearing" is defined as "intended for wear" while "apparel" is defined as "personal attire: clothing" and "something that clothes or adorns." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 56, 1338 (10th ed.1995). As can be seen from the definitions, "wearing apparel" in its broadest sense is not limited to "clothing" but also extends to other "articles" that are usually "worn."

■■■■ In the present case, as in *Webb, supra,* the court is confronted with conflicting principles of statutory construction. On the one hand, it is well-settled that in interpreting Virginia exemption statutes, a court must do so liberally in favor of the debtor, with any doubts to be resolved in favor of allowing the exemption. *See Tignor v. Parkinson (In re Tignor),* 729 F.2d 977, 981 (4th Cir.1984), *citing South Hill Production Credit Assn. v. Hudson,* 174 Va. 284, 6 S.E.2d 668 (1940) and *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 187 S.E. 449 (1936); *In re Hayes,* 119 B.R. 86, 88 (Bankr.E.D.Va.1990) (Shelley, J.) (exemption statutes are to be "liberally construed so as to afford the relief which the legislature intended the debtor to enjoy"); *In re Perry,* 6 B.R. 263, 264 (Bankr.W.D.Va. 1980) (Pearson, J.); *In re Williams,* 3 B.R.

244, 246 (Bankr.E.D.Va.1980) (Shelley, J.). Just as importantly, however, a court must apply the plain meaning of a statute, and in particular, may not enlarge a statutory exemption and read into it an exemption the legislature did not intend to create. *See Tignor,* 729 F.2d at 981 (citing *Goldburg Co. v. Salyer,* 188 Va. 573, 582, 50 S.E.2d 272, 277 (1948)); *Cassell,* 151 B.R. at 81 (citing *United States v. Ron Pair Enterprises Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)).

Courts in other states have looked to a number of factors to determine whether jewelry is in the nature of "wearing apparel" that may be exempted under an applicable statute. One factor frequently considered critical is whether the jewelry has been acquired and worn for its "ornamental appeal," as opposed to having been purchased and held for investment purposes. 4 Collier on Bankruptcy ¶¶ 522.09[4], 522.10[1], at 522–55, 522–68 (Lawrence P. King, ed., 15th ed. Rev.1996); *see also In re Fernandez,* 855 F.2d 218, 221, 222 (5th Cir.1988); *In re Eden,* 96 B.R. 895, 896–97 (Bankr.N.D.Iowa 1988); *In re Reed,* 89 B.R. 603, 606–07 (Bankr.N.D.Tex.1988); *In re Stanhope,* 76 B.R. 165, 165–66 (Bankr.D.Mont.1987); *In re Goldberg,* 59 B.R. 201, 208 (Bankr.N.D.Okl. 1986) (finding that a watch constituted wearing apparel, but that a gold chain and gold ten-dollar coin pendant represented an investment); *In re Mims,* 49 B.R. 283 (Bankr. E.D.N.C.1985).

In *Fernandez,* the issue before the Fifth Circuit was whether jewelry could be classified as "clothing" and thereby exempted under an applicable Texas statute. *Fernandez,* 855 F.2d at 218–19. Notwithstanding that the Texas statute had been recently amended to change the term "wearing apparel" to "clothing," the court held that jewelry may be exempted if it is worn by the debtor and reasonably necessary for the debtor or his or her family. *Id.* at 222. Also of considerable importance to the court were the policy implications—if Texas law permitted debtors to exempt home furnishings and family heirlooms, it was not likely that the legislature intended that debtors had to give up their wedding rings or other jewelry to satisfy the

claims of creditors. *Id.* at 221; *see also Wikle v. Westhem (In re Westhem),* 642 F.2d 1139, 1140 (9th Cir.1981) (reasoning that to be considered wearing apparel, an item of jewelry must actually and necessarily be worn by the debtor); *In re Peters,* 91 B.R. 401, 404 (Bankr.W.D.Tex.1988) (to be considered wearing apparel, jewelry must be reasonably necessary to the debtor's family).

The Fifth Circuit in Fernandez directed the bankruptcy court to develop a list of factors to be used in determining whether claimed items of jewelry qualified as "clothing." In a case decided shortly thereafter, the bankruptcy court did so. *In re Leva,* 96 B.R. 723 (Bankr.W.D.Tex.1989). After an extensive analysis of the Texas case law, the court distilled certain guiding principles, which may be briefly summarize as follows:

1. The debtor must have actually worn the item in question with sufficient regularity to indicate its actual use as clothing.

2. The debtor must have, in good faith, intended to use the jewelry as clothing, keeping in mind that, when jewelry is used as clothing, it does not so much clothe as it adorns and ornaments.

3. The amount of jewelry exempted must not exceed what is reasonably necessary, which is to say, appropriate.

4. The jewelry must not have been bought or acquired largely for an investment or resale purpose.

In resolving these issues, the court indicated that it would look at various evidentiary factors:

5. Whether the debtor attaches sentimental value to a particular piece of jewelry.

6.  Whether the jewelry has a luxurious or ornamental character.

7. Whether the fair market value of the item causes a statutory cap to be exceeded, implies an investment intent or tends to negate a finding that the item in question is reasonably necessary.

8. Whether an unreasonable number of items has been exempted.

9. A debtor's station in life is not generally relevant.

10. Whether the totality of the circumstances is inconsistent with the statutory aim of protecting the family from destitution and embarrassment. *Id.* at 734–35.

After consideration of these factors, the court in *Leva* held that a Rolex watch qualified as "clothing" that could be exempted, but that a diamond ring and a gold bracelet, which the court found were acquired to demonstrate that the debtor had achieved a certain level of wealth, did not qualify as clothing. *Id.* at 735–36.

One case decided by a court within the Fourth Circuit, and under an exemption statute very similar to Virginia's[16] is *In re Mims,* 49 B.R. 283 (Bankr.E.D.N.C.1985). In *Mims,* the debtor claimed exempt a portion of the value of a 1.28 carat diamond engagement ring as "wearing apparel" under the North Carolina exemption.[17] *Id.* at 285. After considering numerous factors such as the absence of clear legislative intent to the contrary, the liberal construction of exemption statutes, and the law from other jurisdictions, the court held that the term "wearing apparel" as used in the North Carolina exemption statute included a diamond engagement ring. *Id.* at 287–88. The court reasoned:

> The definition of the word "apparel," as given by lexicographers, is not confined to clothing. The idea of ornamentation seems to be a rather prominent element in the word.... The phrase "wearing apparel," as used in exemption laws, has its proper sense, and includes all the articles of dress generally worn by persons in the calling and condition of life and in the locality of the residence of the person claiming the exemption. It includes whatever is necessary to a decent

---

16. As noted above, the legislative history indicates that the current Virginia poor debtor's exemptions were drawn in large part from the North Carolina exemption statutes.

17. The debtor had already exempted the balance of the value of the ring under North Carolina's "wildcard" exemption which permitted the exemption of a "debtor's aggregate interest in any property not to exceed three thousand five hundred dollars ($3,500)" (then $2,500). N.C. Gen. Stat. § 1C–1601(a)(2).

appearance and protection against exposure to the changes of weather, and also what is reasonably proper and customary in the way of ornament.

*Id.* at 287 (original source omitted) (omission in original). Similar to *Fernandez*, the court found that to force a debtor to part with an engagement ring was simply contrary to the basic tenets of exemption law—the "preservation of one's dignity." *Id.* at 288.[18]

Given this backdrop, the court now addresses the two items of men's jewelry at issue.

## A. The Men's Watch

■ Having considered the evidence presented, the arguments of the parties, and the applicable law, the court concludes that the debtor's wristwatch, which he testified was purchased for approximately $30 and which appears to serve both a utilitarian and decorative purpose, may be exempted under Va. Code Ann. § 34–26(4) as "wearing apparel." First, and most significantly, this conclusion is supported by the everyday meaning of the term "wearing apparel." As noted above, the definition of "wearing apparel" includes not only clothes, but also items that are worn and adorn the body. Given the policy of construing Virginia exemptions broadly, yet within the plain language of the exemption statutes, the court concludes that a wristwatch qualifies as wearing apparel. This result is supported by the policy underlying the poor debtor's exemption as reflected in the legislative history. A watch is an item of everyday life, something worn by most people that could be considered a "minimum essential for daily life." To permit the exemption of an ordinary wristwatch of modest value within the total $1,000 exemption for wearing apparel comports with the statute's goal of allowing the debtor to "sustain a minimum standard of living" and of providing an "opportunity for the rehabilitation of the debtor" while also "prevent[ing] a creditor from levying on property which has little or no resale value." There is no evidence that the watch was purchased for "investment purposes," and it appears to be "actually worn" by the debtor on a daily basis. Finally, any potential for mischief—by attempting to claim a "luxury" watch as exempt—is limited by the $1,000 ceiling set by statute. *See In re Miller*, 101 B.R. 713, 717 (Bankr. E.D.Okl.1989) (stating that any danger of abuse was curtailed by the legislature limiting the value of items that may be exempted as "wearing apparel" to $4,000); *Leva*, 96 B.R. at 731 (recognizing the ceiling present in the analogous Texas statute). Accordingly, the court will allow the debtor's claimed exemption in his watch.

## B. Cuff links

■ In a similar fashion, the court also concludes that the debtor's cuff links may be exempted under Va.Code Ann. § 34–26(4) as "wearing apparel." If anything, the case is much stronger for classifying cuff links as wearing apparel, since they ordinarily have only one purpose—to be worn with a shirt to fasten the cuffs of the sleeves together. Indeed, in some respects, cuff links could be viewed simply as an extension of the shirt, similar to the buttons. As with the watch, there is no evidence in the record suggesting that the cuff links were purchased or held for their investment value or are not actually worn by the debtor. Additionally, there is no evidence suggesting that the value of the cuff links, together with the other items of wearing apparel claimed exempt, exceeds the $1,000 statutory limit. Accordingly, the court will allow the debtor's claimed exemption of cuff links as well.

## V.

A separate order will be entered denying the claimed exemption in the garnished funds, the checking accounts, the American Real Estate Brokerage stock, and the Richard Meyer Retirement Trust, but allowing

---

**18.** As noted above, in Virginia wedding and engagement rings are separately exempt under Va. Code Ann. § 34–26(1a), with no statutory limitation as to value. Accordingly, the question of whether an engagement ring constitutes "wearing apparel" simply does not arise under the Virginia exemption scheme.

the exemption of men's watch and the cuff links.[19]

19. Because of the last-minute change in the claimed basis for the debtor's exemptions, and in order to give the debtor a reasonable opportunity to comply with the court's ruling, the court will continue the hearing on the order to show cause and on the debtor's motion to dismiss the show cause order to a date approximately one month in the future.